ROBINSON BROS. & CO. v. PATTERSON et al.

(Circuit Court of Appeals, Third Circuit. January 29, 1914.)

No. 1771.

1. SALES (§ 200*)—CONTRACT—PASSING TITLE.

Where a contract for the sale of sewer pipe required that the quantity of pipe should be ascertained, the quality graded, and the price computed, title did not pass by the mere execution of the contract, nor until such conditions had been complied with.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 524–528; Dec. Dig. § 200.*]

2. SALES (§ 182*)—PASSING TITLE—DELIVERY—QUESTION FOR JURY.

Where plaintiff sold certain sewer pipe on leased premises to defendant, and also transferred the lease, but it was necessary, before the amount due for the pipe could be determined, that the quantity and grade should be ascertained, and the price computed, and it did not appear that a surrender of the premises was intended as an acceptance of the pipe by defendant, whether title passed by such delivery was a question for the jury, and it was therefore error to charge that there was a consummated sale.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 492–495; Dec. Dig. § 182.*]

3. SALES (§ 182*)—DELIVERY AND ACCEPTANCE.

Delivery and acceptance as elements of a sale of personal property are essentially questions of intention, and therefore questions of fact.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 492–495; Dec. Dig. § 182.*]

4. ARBITRATION AND AWARD (§ 37*)—APPOINTMENT OF ARBITRATORS—APPOINTMENT OF UMPIRE.

A contract for the sale of personal property provided for the fixing of the price by arbitrators in case the parties could not agree, and declared that each of the parties should select an arbitrator and the two should adjust and fix the grade of the material between themselves, rendering their award in writing, and at the time of their appointment the two arbitrators, before examining the material, should select a third arbitrator, who, in the event of a disagreement between the two, could then be called in and the decision of the third should be final between the parties. Held, that under such contract the parties had no power to choose the third arbitrator, nor could they be charged with fault merely because the two arbitrators chosen failed to agree on the third.

[Ed. Note.—For other cases, see Arbitration and Award, Cent. Dig. § 193; Dec. Dig. § 37.*]

In Error to the District Court of the United States for the Middle District of Pennsylvania; Chas. B. Witmer, Judge.

Action by Luther M. Patterson and others against Robinson Bros. & Co. Judgment for plaintiffs and defendant brings error. Reversed, and new trial ordered.

See, also, 180 Fed. 668, 103 C. C. A. 634.

Candor & Munson and Brown & Stevenson, all of Williamsport, Pa., for plaintiff in error.

Max L. Mitchell, Archibald M. Hoagland, and Seth McCormick, all of Williamsport, Pa., for defendants in error.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

J. B. McPHERSON, Circuit Judge. This controversy between L.
M. Patterson & Co., a Pennsylvania partnership, and Robinson & Co.,
an Ohio corporation, arises upon the following facts:

In 1900 L. M. Patterson & Co., the plaintiffs below, were the lessees
of a sewer-pipe manufacturing plant in Clinton county, Pa., the owner
and lessor being the Lock Haven Clay Works. At the same time the
plaintiffs bought from a former lessee a certain quantity of pipe that
was then upon the premises. Patterson & Co. continued to manufac-
ture for several months, and in December, 1901, were the owners of
the unexpired lease with an option of renewal, and of an increased
quantity of pipe. Under date of December 16th they entered into a
written agreement with Robinson & Co., which has two distinct parts.
By the first part Patterson & Co. agree to use their best efforts to-
ward inducing the Clay Works to make a satisfactory lease of the plant
to Robinson & Co., agreeing also to assign their own interest in the
existing lease. On December 18th the Clay Works consented to accept
Robinson & Co. as substituted lessee, whereupon Patterson & Co. as-
signed, and Robinson & Co. accepted, the lease, which included—

"the plant of the said clayworks at Lock Haven, containing 33 acres, 103
perches, the building, machinery, tools, and fixtures now placed thereon and
used in the manufacture of sewer pipe and brick."

Robinson & Co. thereupon paid to Patterson & Co. an agreed con-
sideration of $7,000. This part of the agreement was fully executed,
and needs no further attention. The dispute arises out of the second
part, which reads as follows:

"(Robinson & Co.) further agree to pay, and (Patterson & Co.) agree to ac-
cept, for all the manufactured goods now on hand at the works in Lock Haven,
Pa., the following rates and prices.

"No. 1 pipe and fittings at 87½ per cent. discount, No. 2 pipe and fittings at
92½ per cent. discount.

"Terms of payment of the above shall be, note of (Robinson & Co.) at three
months without interest, said note to be dated January 1st, 1902.

"In the event of any disagreement arising between the parties of this con-
tract as to the grade of pipe and fittings now on hand at works of (Patterson
& Co.), the same shall be settled by arbitration in the following manner:

"Each of the parties hereto shall select an arbitrator, and these two ar-
bitrators shall adjust and fix the grade of the pipe and fittings between them-
selves, and render their award in writing; and at the time of their appoint-
ment the two arbitrators shall, however, before examining said pipe and fit-
tings, select a third arbitrator, who, in the event of a disagreement between
the two arbitrators first selected, shall then be called in, and the decision of
the third arbitrator shall then be final between the parties hereto."

Robinson & Co. took immediate possession of the leased ground and
plant, and thereupon both parties made efforts to carry out the execu-
tory provisions just quoted. But they soon disagreed, and (after much
delay for which the parties themselves appear to have been responsible)
their differences reached the Court of Appeals in 1910. The only ques-
tion then decided was the effect of the foregoing paragraph concern-
ing arbitration, as will be seen by referring to the report of the case
in 180 Fed. 668, 103 C. C. A. 634. For the reasons there set forth the
controversy was sent back for another trial. This has now been held,
but the present writ of error raises another fundamental question that
is wholly new. We regret exceedingly that this prolonged dispute

cannot be ended now by a judgment of affirmance, but at least one of the errors complained of is vital, and compels us to reverse.

[1] We hope to make this clear by a brief discussion. There can be no doubt that the provisions quoted were executory in several particulars: (1) The quantity of pipe was not accurately known, and had to be determined; (2) the pipe was to be graded; that is, divided between first and second quality; and (3) the price was then to be computed. Grading was evidently regarded by the parties as the most important of these tasks. Quantity could be ascertained by counting, a process that could hardly afford much room for disagreement; and, although the contract did not specify the price, this was to be fixed by certain discounts from an unnamed standard, which was probably understood to be the price generally prevailing in the trade. But apparently the parties foresaw that grading was likely to be a more contentious subject, and accordingly they provided for arbitration in case they should disagree in this particular. In all three particulars, however, something remained to be done before the terms of the contract could become precise, and in such a situation the general rule is well settled that title does not pass by the mere execution of a contract. Elgee Cotton Cases, 89 U. S. (22 Wall.) 180, 22 L. Ed. 863; Benjamin, Sales (7th Am. Ed.) § 308 et seq., note. This is conceded by counsel for Patterson & Co., whose brief admits the correctness of the general proposition, that "so long as anything remains to be done to determine the quality, quantity, or price of the goods, the sale is incomplete, and the title does not pass." They contend, however, that this general proposition should be modified by adding, "provided there has been no delivery"; and they contend further that "where a delivery has been made, this rule has no application, and that delivery was made in the present case."

[2] This brings us to the decisive error that was committed by the learned trial judge. In answer to a point of the plaintiffs he instructed the jury as a matter of law that all the sewer pipe belonging to Patterson & Co. that was on the premises at the date of the agreement—

"became the property of (Robinson & Co.) immediately upon the delivery of the said contract and the entrance into possession of the said premises."

And in the general charge he said:

"Before proceeding to the consideration of the questions of fact presented, I will say to you that in my opinion there was an actual sale consummated by the plaintiffs to the defendants of all the manufactured goods upon the premises in question, for which the latter were bound to pay in the manner stipulated in the writing. The agreement to pay, and acceptance of, a certain stipulated price for the pipe measuring up to a certain grade, as a consideration for all the manufactured goods upon the premises, followed by either actual or constructive possession, whichever it may be regarded in this case, constituted a valid sale, and obligates the defendants to make settlement as agreed upon by the parties. All that was left open by the agreement was to fix and determine the extent of the liability of the defendants for the purchase in question, and this the defendants had a right, under the contracts, to have ascertained by arbitration as agreed, before the plaintiffs' cause of action was complete, unless dispensed with or otherwise prevented by the defendants.

"Coming, then, to the questions which I am about to submit to you: First, did the plaintiffs make reasonable effort to determine by arbitration, as pro-

vided in the writing, the grade of the pipe and fittings in question, or were they prevented from so doing by the defendants? and, second, if you find the plaintiffs free from reasonable blame for such failure, then you will determine whether there was any such pipe and fittings as were designated in the agreement as No. 1 and No. 2, and the quantity and value thereof."

[3] These instructions assume that the title had passed, and (laying the question of arbitration aside) that nothing remained to be done except to determine how much the plaintiffs should recover. We cannot agree with this position; whether the title had passed depended on disputed questions of fact, and these were for the jury to determine, and not for the court. Undoubtedly Robinson & Co. went into immediate possession of the leased premises, and in a certain sense this carried with it the possession—or at least, the custody—of the pipe. Of necessity possession of the real estate involved the physical control and manual possession of the pipe also, but it did not follow that Robinson & Co. intended thereby to accept a legal delivery of the pipe under the contract. Delivery and acceptance are essentially questions of intention, and intention is always a question of fact. Benjamin, Sales, supra, cases cited in note 24 A. & E. Ency. (2d Ed.) 1047; 35 Cyc. 202, 302. The evidence on this subject was in conflict, and therefore the learned judge went too far when he himself determined its effect. For obvious reasons we refrain from discussing the facts and the inferences that might be drawn therefrom; these matters must be submitted to a jury if another trial takes place, and anything we might say now may be inappropriate then, or may even be regarded as expressing an opinion on one side or the other. But we do say that upon the evidence contained in this record the jury should have been instructed that the title to the pipe did not pass, unless there had been delivery of possession under the contract on one side, and acceptance under the contract on the other. And (if the evidence be the same) the jury should determine this dispute under proper instructions.

[4] There was error also in what was said concerning arbitration. The provisions of the contract on this subject were construed when the case was here before, and what was decided then should have been applied on the second trial. We quote from Judge Bradford's opinion (180 Fed. 670, 103 C. C. A. 636):

"The arbitration clause did not provide that the parties· to the agreement or either of them should choose or agree upon or have anything to do with the choice of a third arbitrator. On the contrary, it expressly directed that, in the event of a disagreement between the parties as to the grade of pipe and fittings:

" 'Each of the parties hereto shall select an arbitrator and these two arbitrators shall adjust and fix the grade of the pipe and fittings between themselves and render their award in writing, and at the time of their ap-·pointment, the two arbitrators shall, however, before examining said pipe and fittings select a third arbitrator, who in the event of a disagreement between the. two arbitrators first selected, shall then be called in and the decision of the third arbitrator shall then be final between the two parties hereto.'

"The third arbitrator was to be chosen solely and exclusively by the· two original arbitrators and not by the parties to the agreement, or either of them: The verdict for several reasons cannot support a judgment for the defendant. It appears from the verdict itself that so far as it was intended to relate to the agreement of December 16, 1901, the only ground on which it was rendered was that: ·

" 'In the opinion of the jury (Patterson & Co.) did not make proper effort to agree upon a third arbitrator to appraise and value the sewer pipe sued for, as provided in the agreement on which suit is brought.'

"The jury restricted itself to that ground. But the agreement contained no such provision, and consequently the verdict was erroneous and without justification, and could not support a valid judgment."

The arbitration clause in this contract is unusual in some respects, and is to be distinguished from many other clauses that have been the subject of decision. The parties had no power to choose the third arbitrator, and they could not be charged with fault merely because the two arbitrators failed to agree upon the third. Of course, interference by either party to prevent a choice might be a fault; but, if there was no such interference, and if the two arbitrators failed to select the third, we think the arbitration clause simply became unworkable and might be disregarded. Nevertheless the learned judge asked the jury to determine—and, for anything we know, their verdict may be based upon such determination—whether "the parties" attempted, or made a reasonable effort, to agree upon the third arbitrator, using substantially the same language as was used by the trial judge in the former case. Part of the instructions is as follows:

"It appears that each of the parties, as provided by the agreement, chose an arbitrator. On the part of the plaintiffs, L. M. Patterson was chosen; on the part of the defendants, B. A. Robinson was chosen. When these two arbitrators could not agree between themselves and render their award in writing, adjusting and fixing the grade of the pipe and fittings, the agreement required them to call in a third arbitrator to determine between the parties. * * *

"Other names were submitted from time to time as proposed compromise arbitrators, some by the respective arbitrators and others by the parties in suit. However, none of the proposed persons was selected or agreed upon by the arbitrators. Some correspondence followed regarding this matter, which is in evidence and is for your consideration.

"Did the parties attempt to agree upon a man as a third arbitrator, or, was their effort merely play for position for some reason or other? Do the things the plaintiffs did manifest a reasonable desire to meet the defendants halfway, or, putting it in another way, whose fault was it that this arbitration did not go on to an end, and that the third arbitrator was not chosen?

"If both were equally at fault—and you will bear in mind that it usually takes two to disagree—or, if you conclude that the plaintiffs, or their arbitrator, made a reasonable effort to adjust and fix the grade of the pipe and fittings in the way provided in the contract, and to agree upon a third arbitrator, or that the failure to carry out this agreement is not alone to be charged to them or their agent, they may then recover here, even though the provision of arbitration was not carried out. If, however, on the other hand, putting it in the alternative, you think that no such proper effort was made through the plaintiffs or their agent, and that it was through them that arbitration was not pursued, then the plaintiffs are not entitled to recover, unless the defendants made future arbitration impossible or impracticable by removing or destroying a material portion of the pipe and fittings to be adjusted and graded."

There are other assignments of error, some of them unimportant, but we need consider no others. We venture to express the hope that the parties may see their way to a settlement of this prolonged and expensive controversy without insisting upon another trial.

The judgment is reversed, and a new venire is awarded.