J. L. SHULTZ & Co., INC., Appellant, v. JACOB DE NOOD, Respondent.

Fourth Department, December 1, 1920.

Sales — sale of hay in mow to be pressed and delivered at railroad station — when title passes — replevin — option of buyer to return property.

The title to hay in a mow does not pass to the buyer at the time of the contract of sale, under section 100 of the Personal Property Law, where it appears that the buyer was to furnish a press and operators to bale the hay, that the seller was to furnish men to pitch the hay to the press and to take care of the bales as they came therefrom and was to draw the baled hay to the railroad station.

In an action in replevin by the buyer, held, that a judgment in favor of the seller should be modified so as to give the buyer the option to return the hay.

APPEAL by the plaintiff, J. L. Shultz & Co., Inc., from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Onondaga on the 23d day of November, 1918, upon the verdict of a jury, and also from an order entered in said clerk's office on the 21st day of November, 1918, denying plaintiff's motion to set aside the verdict and for a new trial made upon the minutes.

C. R. Milford, for the appellant.

F. G. Dutton, for the respondent.

DE ANGELIS, J.:

The action is in replevin. The primary question involved in the litigation arose over the title to some hay.

The defendant occupied a farm about a mile from the village of Marcellus, in the county of Onondaga, where he had his crop of hay in two barns and two stacks. On the 27th day of September, 1917, a verbal contract was concluded between the plaintiff and defendant by the terms of which the plaintiff was to buy and the defendant to sell the hay for $12.50 or $13 per ton; the plaintiff within a reasonable time was to bring a pressing machine to the farm with three operators to bale the hay; after the hay was baled the defendant was to draw it from his farm to Marcellus and deliver it to the cars at that place; and the plaintiff was to pay the defendant $350 on account of the purchase price of the hay. The $350 was paid within two or three days after the 27th day of September, 1917.

Up to the time the action was begun the hay had not been pressed or baled.

It appears that there had been dealings between these parties and at the time of the making of the contract in question the defendant was indebted to the plaintiff, but nothing was said upon that subject when the contract was made and there is no claim that there was any understanding that any part of the indebtedness should apply upon the price to be paid for the hay.

The foregoing facts are undisputed.

There was a conflict in the evidence over the price that was to be paid for the hay, the testimony of the plaintiff being that the price was thirteen dollars and that of the defendant that it was twelve dollars and fifty cents per ton. There was also a conflict in the evidence over what the defendant undertook in the contract to do in connection with the pressing and baling of the hay, the plaintiff claiming that, besides the three operators to be furnished by the plaintiff, the defendant was to furnish all the help for the baling, pitching the hay to the press, and taking care of the bales as they came from the press, and was to board all the help; and the defendant, on the other hand, claiming that he was to do nothing of the kind.

The learned trial judge held that upon the undisputed

evidence the title to the hay remained in the defendant, unless the jury should find that it was the fault of the defendant that the hay was not baled within a reasonable time after the contract was made, but if the jury should find that the hay was not baled within a reasonable time after the contract was made by reason of the fault of the defendant, their verdict should be for the plaintiff.

In view of this holding, we must assume that the contract required that, besides the three operators to be furnished by the plaintiff, the defendant was to furnish all the help for the pressing, baling, pitching the hay to the press and taking care of the bales as they came from the press, and was to board all the help, because the dispute between the parties in that regard was not left to the jury. That being the case, I think that the plaintiff's version of the contract should be assumed. Upon this assumption the question of the intention of the parties as to the passing of the property was one of law. (*Russell* v. *Carrington*, 42 N. Y. 118, 125.)

We must be governed by the rules laid down in section 100 of the Personal Property Law (as added by Laws of 1911, chap. 571) as follows:

" *Unless a different intention appears*, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer.

" Rule 1. Where there is an unconditional contract to sell specific goods, *in a deliverable state*, the property in the goods passes to the buyer when the contract is made and it is immaterial whether the time of payment, or the time of delivery, or both, be postponed.

" Rule 2. Where there is a contract to sell specific goods and *the seller is bound to do something to the goods, for the purpose of putting them into a deliverable state*, the property does not pass until such thing be done. * * *

" Rule 5. If the contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon." (The italics are mine.)

These rules assume that the contract is not obnoxious to the Statute of Frauds. (See Pers. Prop. Law, § 85, as added by Laws of 1911, chap. 571.)

It seems to me that the property in this hay did not pass under rules 1 and 2, because it was not in a " deliverable state " under the definition given in subdivision 4 of section 156 of the Personal Property Law (as added by Laws of 1911, chap. 571) for the reason that the hay had to be pressed and baled before it would be in a deliverable state and the defendant was to assist in putting it into that state.

The learned trial court held that the property in the hay did not pass under rule 5, and I think that he was right.

The counsel for the appellant argues that the hay was to be delivered into the possession of the plaintiff, when the plaintiff should go to press and bale it upon the defendant's premises, and, therefore, the hay was in a deliverable state at the time the contract was made and the title passed to the plaintiff under rule 1. I do not think that the contract should be so interpreted. The contract licensed the plaintiff to go upon the defendant's premises to press and bale the hay, but that license should not be held to show that the defendant intended to surrender possession ˙of ˙the hay at that time. While the contract provided for the payment of the $350 towards the purchase price at the time the contract was made, no time was fixed for the payment of the remainder of the purchase price and under section 123 of the Personal Property Law (as added by Laws of 1911, chap. 571) the payment and the delivery were to be concurrent conditions.

The appellant relies upon *Terry* v. *Wheeler* (25 N. Y. 520). In Bogert on the Sale of Goods (p. 107) the intimation is made that rule 5 modifies the doctrine of the *Terry* case. Be that as it may, there is a broad distinction between that case and the case under consideration. In that case the lumber was measured, the purchase price agreed to and paid at the time the contract was made. In such circumstances what interest could the seller have in the property? The comment of Judge Selden on the *Terry* case in *Russell* v. *Carrington* (*supra*, 125) sustains the doctrine of rule 5, as do also *Westmoreland Coal Co.* v. *Syracuse Lighting Co.* (159 App. Div. 323, 326), a case in this court, and *Conroy* v. *Barrett* (95 Misc. Rep. 247),

decided by the New York Appellate Term of the Supreme Court.

I think, however, that the judgment should be modified by the insertion therein of the usual provision giving the plaintiff the option to return the hay.

I recommend that the judgment be modified as indicated and that the judgment as modified and the order be affirmed, with costs to the respondent since the judgment might have been corrected upon motion.

All concur.

Judgment modified by the insertion therein of the usual provision giving the plaintiff the option of returning the hay, and as so modified the judgment is, together with the order, affirmed, with costs to the respondent.