CIOCCA-LOMBARDI WINE CO., INC., Appellant, *v.* ENRICO FUCINI, Respondent.

First Department, February 9, 1923.

**Sales — action by seller to recover purchase price of wine — buyer agreed to furnish necessary permits — contract not illegal — defense that wine was intoxicating and permits could not be secured — obligation was on buyer to procure permits — procuring permits was not impossible and failure to do so was breach — buyer cannot recover money paid as guaranty of performance.**

In an action to recover the purchase price of wine which was sold "for lawful use and under government permit," under a contract obligating the buyer to furnish necessary permits, the contract will be construed to be legal, since the sale and transportation of intoxicating liquors could be made for a lawful purpose under the National Prohibition Act.

The obligation to obtain the necessary permits for the sale and transportation of the wine was placed upon the buyer by the contract, and since it was not impossible for him to obtain those permits under the National Prohibition Act, his failure to do so is a breach of the contract and constitutes no defense to an action to recover the purchase price of the wine, nor can he recover the money paid down to guarantee his performance of the contract.

SMITH, J., dissenting in part, with memorandum.

APPEAL by the plaintiff, Ciocca-Lombardi Wine Co., Inc., from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 5th day of September, 1922, denying plaintiff's motion to strike out the defense and counterclaim contained in the answer.

*Celler & Kraushaar* [*Meyer Kraushaar* of counsel; *Emanuel Celler* with him on the brief], for the appellant.

*Frank, Weil & Strouse* [*Samuel F. Frank* of counsel], for the respondent.

PAGE, J.:

The plaintiff, a California corporation, entered into a written agreement with the defendant dated July 19, 1920, a copy of which is annexed to the complaint and the making of which is admitted by the answer. The contract was that plaintiff agreed to sell and deliver to the defendant "for lawful use and under government permit" 700 barrels of Barbera wine at seventy-two and one-half cents per gallon and 300 barrels of Zinfandel wine at seventy cents per gallon. "Prices are naked F. O. B. Cars California shipping point, * * *. Payment for the wine to be cash against bill of lading attached to sight draft for each shipment. All wine to be shipped before December 1, 1920, pro-

viding cars are available and the railroad company will accept shipments, and party of the second part [defendant] furnishes cooperage and necessary permits. In case E. Fucini should not be able to furnish cooperage, and cars not be available for the shipment of all the wine covered by this contract as agreed, then he will pay for the wine, and assume all risk on it at his expense until it is shipped. E. Fucini has the option to reject this contract any time up to August 3, 1920, and payment by him of $3,500 as guarantee for the fulfillment of this contract, to party of the first part at any time before August 3, 1920, will constitute acceptance of this contract by him." The defendant paid the $3,500, but failed to obtain the necessary government permits.

The action is to recover the purchase price of the wine and storage expenses less the $3,500 paid by defendant. The defendant has not either by motion or upon the argument questioned the sufficiency of the complaint. We will, therefore, only consider the sufficiency of the defense and counterclaim, which are directly attacked by the plaintiff.

The answer admits the making of the contract, but denies the other material allegations of the complaint and sets up an affirmative defense that the wines in question contained more than one-half of one per cent of alcohol and were intoxicating liquors and were and are intended to be used for beverage purposes and were governed by the provisions of the National Prohibition Act and the regulations of the Secretary of the Treasury and the National Prohibition Commissioner made pursuant thereo; that the words "lawful use" referred to in the contract were intended to mean that the sale was to be permitted and allowed by the National Prohibition Commissioner or his duly appointed subordinates; that the government permits referred to in said contract were intended to mean the permits to be issued by the National Prohibition Commissioner in accordance with the law; that between July nineteenth, the date of the making of the contract, and the the other days referred to therein, the defendant made repeated applications to the National Prohibition Commissioner and his duly appointed subordinates to issue a permit to purchase and transport the wine set forth in the contract, and that although due and reasonable efforts were made to obtain the same the National Prohibition Commissioner and his duly appointed subordinates refused to issue said permits or permit the purchase or transportation of any of said wine, without any fault, omission or act of commission or negligence on the defendant's part. As a counterclaim the answer " repeats and realleges each and every paragraph in said complaint numbered ' First ' and ' Second ' and each and every

allegation contained in the foregoing defense, with the same force and effect as if hereinbefore set forth at length." It then alleges the payment of the $3,500 as a deposit on account of the agreed purchase price of the wines in case the proposed sale and purchase were permitted by the National Prohibition Commissioner and his duly appointed subordinates, and only for such purpose; the refusal of the National Prohibition Commissioner to issue the permit and the demand and refusal of repayment.

The contract having been annexed to the complaint and the defendant having admitted it to be the contract between the parties, its scope and effect must be determined from the instrument itself, and not from the allegations of the parties. The construction sought to be put upon the contract by the defendant would render it an illegal contract. The sale or transportation of intoxicating liquors for beverage purposes is prohibited by the Eighteenth Amendment to the Constitution of the United States and the act of Congress, enacted to enforce it. If the sale and transportation of such liquors could be made for a lawful purpose, the contract must be construed to have been entered into with that purpose in view. Where one construction of a contract would render it illegal and another legal, the latter must be adopted, for it will not be presumed that the parties had thereby agreed to do an illegal act. (*Lorillard* v. *Clyde*, 86 N. Y. 387.) Not alone would this be the presumption, but the parties have expressly stated in the contract that the plaintiff agreed to sell and deliver these wines " for lawful use and under government permit." If, therefore, there was a lawful use of these wines for which the government would issue a permit, it was that use that was contemplated. Section 3 of title 2 of the National Prohibition Act of October 28, 1919 (41 U. S. Stat. at Large, 308), provides, so far as material to this consideration: " Liquor for nonbeverage purposes and wine for sacramental purposes may be manufactured, purchased, sold, * * * transported, * * * but only as herein provided, and the Commissioner may, upon application, issue permits therefor." Title 2, section 1, subdivision 7, of said Act (Id. 307, 308) gives to the Commissioner with the approval of the Secretary of the Treasury authority to make regulations to carry out the provisions of the act. The regulations prescribed by the National Prohibition Commissioner and by the Commissioner of Internal Revenue and approved on January 16, 1920, by the Secretary of the Treasury to enforce this measure are known as Internal Revenue Regulations 60. As they existed at the time this contract was made and during the period of its performance, they were substantially as follows, so far as material to this case: Under article 3, section

6, all persons desiring to sell, transport, purchase, possess or use intoxicating liquors for non-beverage purposes must procure permits therefor in the manner provided by the regulations. These permits are not the ones provided for in the contract, but such permits as must be obtained by any person as a basis for his right to perform the acts above mentioned. Before such a permit can be issued the applicant must satisfy the authorities that he is possessed of the necessary qualifications. (§ 8.) Before the permits can be issued the party qualifying must furnish a bond to the Commissioner of Internal Revenue in the prescribed form and the amount of the bond given by the applicant determines the amount and quantity of liquor in which he may deal. (§ 20.) The issuance of the basic permit does not authorize any transaction or traffic, but places the holder thereof in position to apply under article 8, section 54, of the regulations, which is as follows: " Any person entitled to procure intoxicating liquor in accordance with the provisions of these regulations must, in order to obtain such liquor, secure permit to purchase on Form 1410 from the Director, and no person is authorized to furnish or deliver intoxicating liquor except upon receipt of permit to purchase, unless otherwise specifically provided in these regulations. (*a*) Application for permit to purchase must be made on Form 1410, which when approved by the Director, becomes a permit.   *   *   *. "

The following section (55) sets forth at length the requirements for the application to obtain such permit, among which are, that it must be made in triplicate and where transportation is involved one or two additional copies must be furnished; it must contain all the names of the respective parties, the proposed purchaser and seller, the quantity of goods desired to be purchased or transported, and when approved by the Prohibition Director it constitutes a permit. When the permit is approved all copies are sent to the vendor, who is required to set forth, in blank spaces provided therefor, the particular character of the goods, sufficiently to identify them. He is then required to return one copy to the Director, to file one copy at his place of business and if transportation is involved, send the remaining copies to the applicant who retains one copy and delivers the other or others to the carrier. The carrier is not permitted under article 16 to accept any goods for transportation until he receives an approved copy of permit on form 1410.

It was these permits on form 1410 that the defendant under the terms of the contract agreed to obtain and without which it was impossible for the contract to be performed. In this requirement may be found the reason for the contract not vesting at the option

of the defendant for fifteen days. At the end of the fifteen days he signified his acceptance of the contract and paid down $3,500 as a guaranty for the fulfillment of the contract on his part. His failure to obtain the government permits was a breach of the entire contract, and made it absolutely impossible of performance. There is no allegation that the plaintiff did not have a basic permit authorizing him to sell. The defense is predicated upon the inability of the defendant to obtain the permits to purchase and transport. These were not impossible to obtain. If the defendant had the necessary basic permit to purchase, and complied with the requirements of the regulations, and showed that he wanted the wines for a lawful use, it was entirely possible for him to obtain the permit he had agreed to get. He had fifteen days after signing the contract in which he could satisfy himself whether he could obtain the permits. In this connection it is to be noted that while provision is made in the contract against the failure of the defendant to obtain the necessary cooperage and cars, there is no provision, except possibly the option provision referred to above, for his failure to obtain the necessary permits, and it is no defense to an action to recover for a breach of contract that he subsequently found he was unable to accomplish that which he had agreed to do, nor can he recover the $3,500 paid down to guarantee his performance of the contract. The defendant relies upon *Anglo-Russian Merchant Traders, Ltd.,* v. *John Batt & Co., Ltd.* (L. R. [1917] 2 K. B. 679) in which a contract for the sale of aluminum for export was made. At the time the contract was made the law prohibited such export without obtaining a license. There was no provision in the contract for obtaining a license. Lord Chief Justice READING held that some obligation to obtain the license must be implied, for otherwise the contract would be unlawful, but that the " implied obligation is no higher than that the sellers shall use their best endeavors to obtain a permit." Later in the opinion he said: " A party to a contract may warrant that he will obtain a license, but no such term can be implied in this case. The reasonable view of the contract in my opinion * * * is that the sellers sold subject to their being able to ship under a license and that they impliedly undertook to use their best endeavors to obtain a license." In the case before us the defendant undertook to obtain the necessary permits and made a deposit as a guaranty of his performance of the contract. Nor is the case of *Adler* v. *Zimmerman* (233 N. Y. 431) an authority in support of the defendant's contention. In that case the action was to recover on a dishonored check given for the purchase of liquor sold and delivered without a permit having been first obtained.

In my opinion neither the defense nor counterclaim was sufficient and the motion to strike them out should have been granted.

The order should be reversed, with ten dollars costs and disbursements, and the motion granted, with ten dollars costs.

CLARKE, P. J., DOWLING and McAVOY, JJ., concur; SMITH, J., dissents in part.

SMITH, J. (dissenting in part):

Under an allegation in the answer of illegality in the purpose of a contract the defendant may prove that the contract though legal in form was entered into for such illegal purpose. The presumption of legality where a contract is capable of two interpretations — one denoting a legal contract and the other an illegal contract — is a primary presumption only and may be overcome by proof of an illegal purpose intended. Under the allegations of the answer the defendant may prove that the wine was illegally sold to be used as a beverage and the court will give no aid to either party to a contract thus tainted. The counterclaim should be stricken out because under its allegations recovery is sought upon an illegal contract.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.