## KAHN v. ROSENSTIEL et al.

### (District Court, S. D. New York. May 23, 1924.)

1. **Intoxicating liquors** ⬉330—**Buyer may recover deposit on discovery of illegality of withdrawal permit only if contract was not executed.**

   Plaintiff may recover a deposit paid on a contract to purchase whisky on discovery that withdrawal permit was illegal, if contract was not fully executed; if fully executed, he may not.

2. **Intoxicating liquors** ⬉330—**Contract requiring whisky to be bottled and shipped held not fully executed.**

   Where contract required seller to bottle and ship whisky under Sales of Goods Act N. Y. § 100, rule 2, it is not executed until whisky is bottled and shipped, even if sale was part of store of fungibles to which title might pass, under section 87, subd. 2.

3. **Sales** ⬉200(1)—**Presumptively title does not pass until seller has completely performed.**

   Presumptively parties do not mean to pass title until seller has finished his part of performance and buyer has only to take goods.

4. **Intoxicating liquors** ⬉330—**Buyer of whisky having a "basic permit," not producing "withdrawal permits" breaches contract.**

   Where parties to sale of whisky have valid "basic" permits, it is a breach by buyer not to produce "withdrawal permits."

5. **Intoxicating liquors** ⬉330—**Buyer, failing to secure "withdrawal permits" of whisky, has no cause of action.**

   Where contract for sale of whisky contemplated buyer's assumption of any risk involved in securing withdrawal permits, if both buyer and seller had valid "basic permits," and buyer failed to secure "withdrawal permits," he has no cause of action.

At Law. Action by Jacob J. Kahn against Lewis S. Rosenstiel and others, copartners trading under the firm name and style of the Cincinnati Distributing Company. On demurrer to the declaration. Demurrer overruled as to first count, and sustained as to second.

Samson Selig, of New York City, for demurrer.

Thomas & Friedman, of New York City (Joseph H. Hazen, of New York City, of counsel), opposed.

LEARNED HAND, District Judge. The declaration is upon the following facts: The plaintiff's assignor and the defendants made a contract on September 23, 1920, by which the plaintiff's assignor bought and the defendants sold 2,000 cases of whisky, bottled in bond, at $26 per case f. o. b. the defendants' distillery, where it lay in the wood. The buyer agreed either to get a withdrawal permit for 1,000 cases within 30 days or to pay the balance of the prices of such cases; also to do the same as to the remainder within 60 days. In the event of default in withdrawing or payment, an initial payment of $10,000 was to be treated as liquidated damages. The seller was to bottle the goods and ship them by express or freight, at buyer's option, within 30 days after arrival of the withdrawal permit.

[1] At the time when the contract was made the seller had a permit authorizing him to sell and the buyer a permit to buy, but neither party was a wholesale manufacturer or druggist, and the permits turned out to be void. The buyer paid down $10,000, but on discovery of the illegality of the permits and before any of the liquor was delivered he declined to proceed, and demanded a return of the money paid. If

⬉For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the contract was not fully executed the plaintiff may recover. Spring Co. v. Knowlton, 103 U. S. 49, 26 L. Ed. 347; Block v. Darling, 140 U. S. 234, 11 Sup. Ct. 832, 35 L. Ed. 476. If executed, he may not. Thomas v. Richmond, 12 Wall. 349, 20 L. Ed. 453; St. L. R. R. Co. v. Terre Haute R. R. Co., 145 U. S. 393, 12 Sup. Ct. 953, 36 L. Ed. 748; Harriman v. Northern Securities Co., 195 U. S. 244, 25 Sup. Ct. 493, 49 L. Ed. 739; Williston on Contracts, §§ 1787, 1788. The theory is that until the contract is performed there should be a locus pœnitentiæ. Here the plaintiff alleges that, as soon as his assignor learned that the permits were void, he at once disaffirmed the bargain.

[2] Thus the question is whether the contract was executed. Clearly not. The seller had to bottle and ship, and this brings the case within section 100, rule 2, of the New York Sales of Goods Act (Consol. Laws, c. 41, art. 5). It makes no difference that this was the sale of part of a store of fungibles to which title might pass, under section 87, subd. 2, though it nowhere definitely appears whether or not that was the case. Even so, the plaintiff would be in no stronger position than if the sale had been of identified goods. In either case the presumption is that, while the seller has to do something more to put the goods "into a deliverable state," no title passes. The defendants' supposition is mistaken that this refers only to something done in the manufacture of the goods themselves, and does not include putting them into packages or barrels, or, as here, bottles. The first instance of the doctrine turned upon filling casks of turpentine (Rugg v. Minett, 11 East, 210), where the title passed to the filled casks and did not to the unfilled. So in the Elgee Cotton Cases, 22 Wall. 180, 22 L. Ed. 863, the cotton was in a warehouse, but had not been baled. It is true that some of it had apparently not been ginned either, but the court made no distinction between what was ginned and what was not. So in Robinson v. Patterson, 210 Fed. 839, 127 C. C. A. 389 (C. C. A. 3), where pipe had only to be graded. So, too, in Noyes v. Marlott, 156 Fed. 753, 84 C. C. A. 409 (C. C. A. 9), where the seller had only to put logs in a boom. In Shultz & Co. v. De Nood, 194 App. Div. 149, 185 N. Y. Supp. 785 (4th Dept.), the hay had not been baled, but had been cured.

[3] Any such distinction ignores the reason for the rule, which is that the parties do not presumptively mean to pass title till the seller has finished his part of the performance and the buyer has only to take the goods. The doctrine of section 100, rule 5, is indeed only another instance of the same notion; it provides that, when the seller must deliver at a particular place, title does not pass till delivery has been made. Normally delivery is at the seller's place of business (section 124, subd. 1), and thus the seller, as soon as the goods are in deliverable condition, has nothing further to do but allow the buyer to come and get the goods. Therefore, in the case at bar, title would not in fact pass till the defendants had "made shipment" of the bottled whisky "f. o. b. distillery," which probably means on cars at that place. In any aspect the contract remained executory until the seller had completed his performance.

In so disposing of the demurrer I have assumed a state of facts which really the declaration does not present. Taken strictly, it alleges no more than that the defendants had a "basic" permit (article 7); that the contract was made (article 8); that the plaintiff's assignor paid the liquidated damages in good faith (articles 9 and 10); by implication that the plaintiff's assignor had a "basic" permit (article 12); that the defendants were not wholesale druggists or wholesale manufacturers (article 16); that the plaintiff's assignor was neither a retail nor a wholesale druggist, nor a manufacturer of nonbeverage alcohol, nor the manager of a hospital for alcoholism (article 17); that none of the whisky had been delivered, (article 18); and that the plaintiff's assignor repudiated the contract on learning of its illegality (article 19) and demanded back his money (article 20). All the rest outside of the jurisdictional allegations is statement of law, has no place in the declaration, and must be ignored.

A nice treatment of the pleading would require me to disregard the question whether the whisky had been bottled, and, if that was essential to the cause of action, to sustain the demurrer. Even so, I should interpret the eighteenth article as alleging that the defendants had not "made shipment" of the whisky "f. o. b. distillery," whatever that may mean. However, I do not understand that the parties wish me to adopt so narrow a view of the pleading, and I have assumed, therefore, that the whisky had not been bottled when the plaintiff's assignor repudiated the contract. It makes no difference in the result.

[4, 5] The second count of the declaration would fall squarely within Ciocca-Lombardi Wine Co. v. Fucini, 204 App. Div. 392, 198 N. Y. Supp. 114, affirmed 236 N. Y. 584, 142 N. E. 293, were it not for the twenty-fifth article, which alleges that the defendants had not a valid "basic" permit. The case cited has only this relevance to this litigation: When parties have valid "basic" permits, it is a breach by the buyer not to produce "withdrawal permits." The contract in suit clearly contemplated the buyer's assumption of any risk involved in his securing "withdrawal permits," and there would be no cause of action if both buyer and seller had had valid "basic permits." The first count alleges facts which prove that neither had; the second says nothing about the "basic permits," except as I have said. I think that, if the plaintiff wishes to sustain this count, he must allege the facts, and not content himself with conclusions of law. If he should plead the facts showing that one or both parties had not "basic permits," the counts would be identical.

Demurrer overruled to the first count, and sustained to the second. The plaintiff has leave within 10 days to amend the second count, and, if he does not, the count is dismissed. The defendants will answer within 20 days, either to the first count alone, if the plaintiff does not replead within 10 days, or to both, if he does.