[Civ. No. 683. Fourth Appellate District.—May 11, 1933.]

M. W. BRASHEARS, Respondent, v. FRANK GIANNINI, Appellant.

Russell & Heid, Hugh L. Preston, Jr., and J. L. Royle for Appellant.

Walker R. Flint for Respondent.

ANDREWS, J., *pro tem.*—This action is brought to recover that portion of the purchase price paid by plaintiff to defendant under a written contract entered into between the parties on the fourteenth day of December, 1929. The contract was for the sale of a large quantity of wine designed to be used for sacramental purposes, the wine being then in the possession of the defendant, it being stipulated that withdrawals or deliveries were to fully comply with federal and state prohibition laws.

The contract included sales of the same character made on previous occasions, which earlier sales were superseded by the last contract. All the dealings related to wine for sacramental purposes and the understanding of the parties was that the purchase was made by plaintiff for resale to rabbis. It was within the general knowledge of the parties that plaintiff had no permit to buy or take delivery of sacramental wine and that she did not contemplate obtaining permits for withdrawal to herself but that withdrawals were to be made under permits to be obtained by purchase from her.

Early in January, 1930, plaintiff, being advised that the contract was unlawful and that performance of the same was impossible by reason of the national prohibition laws and the regulations of the prohibition department, demanded of defendant a return of the $5,600 paid on the purchase price. Defendant refused payment and this action was instituted.

█ (1) Was the contract illegal and void? It is the contention of both sides that it was understood to be lawful and enforceable at the time it was made and that it was entered into in good faith and was intended to enable the parties to promote the distribution of sacramental wine and was entirely within the letter and spirit of prohibition legislation.

The method by which the contract was to be carried out was, however, in violation of the laws and regulations for

the handling of sacramental wine in force at the time. The section of the prohibition law dealing with sales of sacramental wine reads: ''No person to whom a permit may be issued to manufacture, transport, import, or sell wines for sacramental purposes or like religious rites shall sell, barter, exchange, or furnish any such to any person not a rabbi, minister of the gospel, priest, or an officer duly authorized for the purpose by any church or congregation, . . . '' (Sec. 16, National Prohibition Act, U. S. Code, Annotated, title 27.) Under this provision no contract of sale would be valid unless the purchaser was one of the classes specified in the act. That she was not one of these classes was known to both parties.

Section 12 of the National Prohibition Act provides, so far as is here material, as follows: ''Liquor for nonbeverage purposes and wine for sacramental purposes may be manufactured, purchased, sold, . . . transported, . . . but only as herein provided, and the commissioner may upon application, issue permits therefor.'' Under this provision it would have been necessary for the plaintiff to have been licensed as a dealer and have what is generally called a basic permit before she could lawfully enter into the contract. Such a basic permit she did not have, as was known to the parties, but it seems not to have been understood by either of them that such a permit was necessary in order to make the purchase of the wine in question or to sell the same as contemplated to purchasers.

No effort seems to have been made by plaintiff to obtain such a permit, and had such permit been applied for it could not have been granted under the laws and regulations governing this transaction. It would seem, therefore, to be easy legal reasoning that if plaintiff was not of the class who could purchase sacramental wine and was not one authorized to deal in that commodity, that a contract made by or with her would be a plain violation of law and incapable of enforcement.

█ It is urged that if the transaction as a whole is not opposed to the general purposes of the prohibition laws, technical regulations should not be held to make it unlawful. The obvious answèr is that the method provided by the laws and regulations enter into the general purpose as much as the laws themselves. Defendant upon this phase of the case

relies on the case of *Ciocci-Lombardi Wine Co., Inc.,* v. *Fucini,* 204 App. Div. 392 [198 N. Y. Supp. 114], as a case squarely in point.

The contract in that case was an agreement to sell and deliver wine "for lawful use under government permit" and gave to the purchaser the option to reject the contract within a period of fourteen days. After the fourteen days the purchaser, as a guarantee of the fulfilment of the contract, paid to the seller $3,500, but thereafter failed to obtain the government permits referred to in the contract and was, therefore, unable to carry out the contract. The action was brought to recover the balance of the purchase price.

The question of the sufficiency of the complaint and the legality of the contract attached thereto was not raised, the only question being the sufficiency of the defense and counterclaim. The answer set up that the wines were intoxicating liquors and were intended to be used for beverage purposes. The court held the answer insufficient upon the ground that the contract was legal upon its face and that this would overcome any contention of illegality.

The other defense was that the contract was impossible of performance for the reason that no government permit contemplated by the contract could be obtained from the prohibition department. With reference to the permit the court held that the contract was not impossible of performance if there were purposes for which the sale was lawful, which was assumed to be the case, and points out that it was the duty of the buyer to have applied, under a certain section of the act, for a basic permit to be a purchaser, which would be issued if he could establish his qualifications and give the bond required, and after being thus authorized to deal it was his duty to obtain the permits referred to in the contract in order to handle the merchandise, and that doubtless the fourteen-day option may have been designed to enable him to ascertain whether he would be able to get such permits, and that by paying the money to guarantee its performance he must be held to have assumed the risk of being able to carry out the contract along legal lines, and that his failure to obtain the permits, which must have been held to have been within his power, constituted a violation

of the contract. The plaintiff recovered and the answer and cross-complaint were stricken out.

Thus it will be seen that none of the questions in the instant case were involved in the Ciocci-Lombardi case, where the contract was held to be valid but failed of being carried out only because defendant did not obtain the permits which he should have known whether he could procure at the time he paid his money.

In the instant case the contract was unlawful when made and the application of plaintiff to the prohibition department for permits to carry out the same could not be granted and were refused and the same was unenforceable as a matter of law from the beginning.

■ (2) A further defense is offered based upon the contention that if the contract is a violation of the prohibition laws, the parties to the contract must be held to be *in pari delicto* for making a contract subversive of the high purposes intended to be worked by such act.

The contract being executory, if found to be illegal or unenforceable in its inception, recovery may be had of the money paid as an initial payment unless the contract is one which involves moral turpitude or intentional evasion of some law or public policy designed to promote the public welfare. It being conceded that the contract was entered into in the belief that it related to merchandise salable under the prohibition regulations and one that could be lawfully carried out in accordance with those laws and that there was, as to the law itself and the provisions for its execution, a mutual mistake involving no element or intent of wrongdoing, the question does not arise as to whether they were mutually engaged under the contract in an unlawful undertaking. The contract is to be construed as one where, by reason of technical rules of law, it had no legal basis and afforded no consideration for the money paid, and recovery could be had in an action for money had and received.

■ (3) The defendant makes further contention that, inasmuch as the form of action only enables recovery of money actually received and unconscionably retained, and that after he had received the $5,600 he paid $3,000 to Kessler as part of the transaction, therefore, recovery should

be limited to the $2,600 which he actually benefited from the transaction.

In his briefs defendant repeatedly makes the assertion that the $3,000 was paid after the final contract made in December and that the delay on the part of plaintiff to assert her claim of illegality and demand rescission was such that defendant was justified in making the payment.

He also asserts that the arrangement between Kessler and himself for this payment was understood and agreed upon between the parties. An examination of the record indicates that he is in error as to the time of payment which from the testimony appears to have been at the time of making the contract of September 3d, or at the time shortly thereafter when a payment of $500 was made. The testimony seems to so read and reference to the exhibits indicates this to be the fact, particularly the letter written by Lossman to defendant, dated October 20, 1929, referring to the parties here represented: "They never knew and never heard of Kessler, until our trip to Tulare. It was I that sold them the merchandise, not Kessler, and I warned you upon our first visit to your place not to give him any commission and you have carelessly thrown away Three Thousand dollars which he has obtained from you under false pretense, . . . Without any doubt you could recover the money from him, and we will all help you to prosecute him to the full extent of the law. . . . By all means go after him for the $3000.00 which I am sure he will be compelled to return to you with all costs."

It might still be true that defendant only profited to the extent of $2,600, but as there is nothing in the record to justify the contention that there was a general understanding that Kessler should be paid anything, it is also true that the loss to plaintiff was the entire amount. The testimony of Kessler that he paid Lossman $500, which Lossman did not testify about, is not met directly but seems to have been disregarded as having no bearing or may have been discredited by the trial judge. At any event the contract made December 14th, long after the payment had been made to Kessler, may have been designed to definitely fix responsibility as to the amount which should be regarded as then paid on that contract, and measured by that agree-

ment there seems to be no escape from the conclusion that it fixes the measure of recovery.

■ (4) Defendant earnestly contends that there is a technical failure in the evidence contained in the record to show that plaintiff was "not a rabbi", or some person who was entitled to obtain a permit to purchase sacramental wine, or that proper application had been made to the prohibition department, or as to efforts to comply with the contract. The answer is that the department gave the information that under the regulations no permit could be had for the purposes of this contract, so no written or formal application was filed. The testimony does disclose who plaintiff was and in what business engaged, and fairly interpreted precludes any inference that she could have been a person entitled to obtain the .permit. But perhaps more than this the entire history of the transaction leaves no doubt that it was understood and the case was tried upon the theory that plaintiff did not have and did not expect it was necessary to have a permit. A simple answer would be that the contract being held to be illegal any attempt to carry it out would be immaterial.

The judgment of the trial court is affirmed.

Barnard, P. J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 7, 1933, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 10, 1933.