**MACCO CONST. CO. v. FARR et al.**
No. 10312.

Circuit Court of Appeals, Ninth Circuit.
June 25, 1943.

Walter O. Schell and Gerald F. H. Delamer, both of Los Angeles, Cal., for appellant.

Phillip Barnett, of San Francisco, Cal., for appellees.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

This is an appeal from the District Court of the United States for the Northern District of California, Southern Division.

The case originated with the filing of a complaint in the superior court of the State of California for the City and County of San Francisco.

The complaint alleged that the defendant entered into an oral contract with the plaintiffs whereby the latter agreed to furnish four automobile trucks and their personal services in the operation of the same, and the defendants agreed to hire the exclusive personal service of said plaintiffs and said trucks and equipment for the entire duration of a certain grading and excavation project of defendants; that relying upon said oral agreement and pursuant thereto plaintiffs purchased said number of automobile trucks and defendants did hire the personal services of plaintiffs and the use of said equipment, commencing on the 3rd day of December, 1940; that on or about the 18th day of January, 1941, the defendants without cause discharged the plaintiffs and refused to allow them to continue performance of said contract and that thereby they were damaged in the sum set forth in said complaint.

On motion of the defendant Macco Construction Company said cause was removed to the District Court of the United States for the Northern District of California, Southern Division.

The defendant Macco Construction Company (Appellant here) filed its answer admitting that on or about the 3rd day of December, 1940 it entered into an oral agreement with the plaintiffs whereby the plaintiffs agreed to furnish four automobile trucks and their personal services in the operation thereof and that defendant agreed to hire said personal services of plaintiffs and said truck equipment. The answer, however, denied the agreement was for hire of said trucks and services for the entire duration of said project or for any other specified time. The answer further alleged that the agreement for the hiring was merely for such time as the defendant desired to avail itself of said truck and personal services. The answer admitted that on or about the 18th day of January, 1941, the defendant ceased to desire to avail itself of said services and equipment and thereupon terminated the said agreement. The answer denied the damages alleged in the complaint.

For a second and separate defense the answer alleged that the trucks furnished were not in good serviceable condition and were not maintained in workable condition and that by reason of their defective condition, plaintiffs breached the said agreement.

In a third defense the answer alleged that by reason of the unserviceable condition of the said trucks the consideration to the defendant for entering into the agreement for hire failed in a material part.

As a fourth defense it was alleged that prior to the commencement of the action plaintiffs had assigned all their right and interest therein to another corporation.

A jury trial was held. At the conclusion of plaintiff's case the defendant moved to dismiss, which motion was denied. At the conclusion of all the evidence defendant made a motion for a directed verdict in its favor, which motion was denied and exception allowed. The jury returned a verdict in favor of the appellees in the sum of $2,500.00.

Appellant filed a motion to set aside the verdict and any judgment entered thereon and that judgment be entered in its favor, or in the alternative, a new trial be granted. Said motion was denied and final judgment entered in favor of the appellees from which this appeal is taken.

There are a number of specifications of error based upon matters of evidence—that the evidence fails to support the damages awarded; that even if the evidence shows that appellant breached the contract appellees did not lose any profits by reason thereof; that the evidence is insufficient to support a finding that the contract was for a definite period of time; that the evidence fails to support a finding that appellant breached any existing contract between the parties.

■ The above enumerated assignments of error based upon matters of evidence with a few other minor ones are not discussed herein in detail. It is sufficient to say that these issues of fact were properly submitted to the jury upon conflicting testimony and its determination of them must be sustained because supported by substantial evidence.

Appellant's principal contention is that as a matter of law appellees were not entitled to recover because they had obtained no permit from the Railroad Commission of the State of California. Appellant strongly insists that by virtue of the City Carriers' Act No. 5134, Deering's General Laws of the State of California, Stats.1935, p. 1057 as amended Stats.1937, p. 629, the contract was void since the appellees had obtained no license from the Railroad Commission of the State of California permitting transportation of property by trucks over public streets.

Appellees made out their case in chief without any reference having been made as to where or by what route the earth to be moved should be transported.

After the appellant had brought out that some of the earth was moved over the public street in claimed violation of the above cited City Carriers' Act one of the appellees was recalled and he testified that during the negotiations leading up to the contract Mr. Wells who represented the company had stated the hauling job would be on private property of the Bethlehem Steel Company where the excavating was taking place and that it was understood that the dirt would be loaded on barges and taken to Alameda. Appellant argues that this testimony although not denied is not true and in any event contends that the contract was void because at least some use was made of the highway without the required permit.

Appellant moved that the trial court dismiss the action on the ground that upon the showing that some use had been made of the city street without an official permit the contract was rendered void. It should be noted that the answer had not pleaded this defense. The trial court refused to dismiss and this claimed error is the principal point of contention in this case.

■ The California City Carriers' Act specifically provides penalties for its violation. Certain of these are denominated "Criminal Penalties", Section 13, and others designated "Civil Penalties", Section 14. Where the legislature thus particularly enumerated these penalties we must not assume that some others not named were intended to be included. The Act does not declare that a contract entered into or executed between the parties which involved the use of a highway in transporting materials was void because no permit had been secured.

■ The contract did not require the use of the street. On the contrary, at the time it was made the intention was otherwise. Admittedly, much of the transportation of the dirt was carried out wholly on the premises of the Bethlehem Steel Company as originally contemplated. No attempt was made by the appellant to show what part of the hauling was over the street although it alone had this accurate information. Moreover, the contract did not require that appellees perform the work without procuring a permit; nor does it appear that appellees could not have secured a permit or license if necessary.

The evidence of appellees was that the dirt was to be hauled entirely upon the premises of the Bethlehem Steel Company where the excavating was being done. When the work began this plan was followed. The evidence shows that appellant was to engage the drivers of the trucks, that it did hire them, paid them and directed their work. The change of the dump to a place which necessitated some use of the street was directed by appellant and carried out by the drivers hired by it and under its direction. There is no showing that any of the appellees were personally engaged in this part of the work.

In an exact sense, appellees were not public carriers at all as the operation of hauling in its inception did not contemplate the use of the city street and to do the work the way it was inaugurated would not require a permit. Appellees were not "engaged in transportation for compensation or hire as a business over any public highway in any city or any city and county of this state by means of a motor vehicle or vehicles", as the City Carriers' Act provides.

■ It is apparent that this contract was not entered into for any illegal purpose or with any understanding or intent to violate the law and hence is not malum in se, but appellant insists that the decisions of the California courts hold that where a

statute provides a penalty for an act, a contract founded on such act is void although the statute does not pronounce it void or expressly prohibit it, and cites in support of its position: City of Los Angeles v. Watterson, 8 Cal.App.2d 331, 48 P.2d 87; Holm v. Bramwell, 20 Cal.App. 2d 332, 67 P.2d 114; Citizens State Bank v. Gentry, 20 Cal.App.2d 415, 67 P.2d 364. The contracts in these cases cited, as a reading of the decisions shows, are very different from the one we are here considering. In the Watterson case, the contract was entered into fraudulently for the purpose of evading the law. Watterson and his fellow defendants were president, secretary and directors of an Irrigation District and had entered into an agreement whereby they would become owners of certain bonds issued by the District and which were purchased by a third party acting in collusion with the officers and directors and for their benefit. The contract being for the purpose of evading the law was held void from the beginning.

In Holm v. Bramwell, supra, there is involved the Contractors' License Law of California, Section 12 of which specifically provides: " * * * No person engaged in the business or acting in the capacity of a contractor [or subcontractor] as defined by section 3 of this act, shall bring or maintain any action in any court of this State for the collection of compensation for the performance of any act for which a license is required by this act without alleging and proving that such person was a duly licensed contractor at the time the alleged cause of action arose." St.1933, p. 1492.

Also, the case of Citizens State Bank v. Gentry, supra, involved the same section. There is no such provision in the City Carriers' Act No. 5134.

Appellant also cites other cases where the contracts were held void ab initio, such as Brashears v. Giannini, 131 Cal.App. 706, 22 P.2d 47, where the parties had entered into a contract which violated the Federal Prohibition Law.

As an authority for holding that the defense of illegality need not be pleaded and that it is the duty of the court to deny any relief to plaintiff as such if it appears that doing the act would be unlawful under the particular existing circumstances, appellant cited Tatterson v. Kehrlein, 88 Cal. App. 34, 263 P. 285, 290. That was an action based on the sale of securities which violated the Corporate Securities Act. The court there said:

"The Corporate Securities Act, chapter 532, Statutes 1917, as amended by chapter 148, Statutes 1919, chapters 597 and 658, Statutes 1921, and chapter 50, Statutes 1923, defines in section 2, subdivision 7, the term 'sale' as including 'issue'. Section 3 prohibits 'sale' (which includes 'issue') without securing a permit from the commissioner of corporations; section 12 makes security issued without a permit void; section 13 makes the 'issuing' corporation guilty of a public offense; and section 14 makes the officers, agents, and employees of the corporation guilty of a public offense."

As the court pointed out, the statute prohibits the contract and it was held illegal and void.

The Legislature did not declare that incidental violation of the City Carriers' Act for which penalties have been prescribed would render void a contract the object of which was inherently proper and not in violation of the law. Had such been the intention it would have been easy to make it manifest. A few words would have expressed or accomplished that purpose as was done in the statutes above noted.

■ A considerable number of recent cases[1] have held that where the violation of a licensing statute is merely malum prohibitum and does not endanger the public health or morals and where penalties for non-compliance are specifically set forth and no declaration that a contract in relation thereto is void or its enforcement prohibited, such additional punishment should not be imposed unless the legislative intent is expressed or appears by clear implication.

Furthermore, this is not a contract illegal per se, nor is the subject matter prohibited. The penalty, if any was incurred, would be for the violation of a statute relating to the use of the streets and has nothing whatever to do with the subject matter or performance of this contract as such.

■ As a general principle, an indirect connection between the obligation of a contract and some restricted transaction will not bar the enforcement thereof: " * * * When a statute is for revenue purposes, or is a regulation of a traffic or business, and not to prohibit it altogether, whether a contract which violates the statute shall be

---

[1] See Annotations 118 A.L.R., p. 646.

treated as wholly void will depend on the intention expressed in the particular statute. Unless the contrary intention is manifest the contract will be valid. * * *" Section 336, Sutherland, on Statutory Construction; see also Wood v. Krepps, 168 Cal. 382, 143 P. 691, L.R.A.1915B, p. 851; Ziemer v. Babcock & Wilcox Co., D.C., 22 F.Supp. 384.

It is always the purpose of the law to avoid absurdities, injustice and hardship. We may be sure it never was the legislative intent that beneficiaries of the violation, particularly if they themselves were instrumental in bringing about the breach, should thus be relieved from the just obligation of their contracts. The ruling of the trial court upon the point discussed under the circumstances revealed by the evidence was manifestly just.

### Other Claimed Errors.

Another claim of error is that if the evidence affirmatively established that the contract originally was for a definite period, a novation occurred whereby that contract was terminated and a new hiring took place which was not for any definite period. It is also claimed, that conceding it had been agreed at the time the oral contract was made that the transportation of the excavated earth should all be done on the Bethlehem Steel Company's property, the fact that after work commenced the place of deposit was changed which required some use of the street also effected a novation.

Appellant further contends that the trial court committed prejudicial error in refusing to instruct the jury that before the plaintiffs could recover they must show they were ready, able and willing to perform their contract at the time of its alleged breach by the defendant.

As in other matters there was a conflict in the evidence on all these questions. The issues were submitted to the jury and in relation thereto the following instructions were given:

"* * * Now, the defendant Macco Construction Company also has another viewpoint. They say that there was a term, either express or implied, that these trucks when they first came on the job would be reasonably in condition to do the work expected of them. They say that because the evidence shows that the first day the trucks didn't work a great length of time and that there was afterwards work done upon them to fit them out better—and you have heard both sides on what that work was—that the defendant told these men through one of its agents that they were through. In other words, that if there was an expressed contract at that time, that the defendant takes the viewpoint that it then said, 'We declare this contract off;' and the plaintiffs agreed to this by saying, 'Well, could we do something to get back on the job?' If the parties at that time agreed upon the oral contract by mutual consent, they could do that without liability on either side, and thereafter they could enter into a new contract. This is what the defendant claims. However, that is a question of fact which you must determine as to whether the defendant did abrogate the contract with the consent of the plaintiffs at the time the plaintiffs first came on the job on the 9th day of December, and thereafter made a new arrangement with them whereby they were hired day by day.

"If you find that the plaintiff's contention was established that there was a contract for four months' duration, and that was not abrogated, according to defendant's contention, but existed from that time on up until the 17th day of January, I think it was—at any event, the date when the plaintiffs were told finally that they were through—then you have to determine who breached the contract. * * * If you find in the first place, there was a contract which the plaintiffs claimed did exist, and that the terms of the contract implied fitness of equipment to do the job, and on that day and before that time the plaintiffs had broken the contract by not having the equipment in reasonable shape to carry on, then you may determine that the defendant properly exercised [its] right to declare that the plaintiffs were in default of the contract. If the defendant did that under those circumstances [it] would not be liable for anything. On the other hand, if the equipment was reasonably sufficient for the work on the job, and you so find, and find that the defendant without any proper excuse of that sort broke the contract itself by putting these people off the job, then you may consider the question of damages. * * *"

A careful reading of the above quoted instruction is a sufficient answer to these other claimed errors.

Affirmed.

HANEY, Circuit Judge, did not participate in the consideration or decision of this case.