# Shipler et al. *v.* New Castle Paper Products Corporation.

# Hygienic Fibre Co.'s Appeal.

*Sales—Contract—Delivery of possession—Incomplete goods—Act of May 19, 1915, P. L. 543—Corporations—Insolvency—Receivers —Rights of creditors.*

1. Where a contract is to manufacture and deliver goods in the future, and something remains to be done to the goods for the purpose of putting them in a deliverable state, title to the goods does not pass until such thing is done, under the Act of May 19, 1915, P. L. 543, and this is the case as against an insolvent seller, even if the goods have been paid for in whole or in part.

2. To protect property sold against attaching or levying creditors of the seller, there must be an actual or constructive delivery of the property and if nothing is shown which indicates an adequate change of possession the transfer will constitute, as to such creditors, a legal fraud, and this is so irrespective of the good faith of the purchaser, who has paid the full price agreed on.

3. The mere payment of the selling price or for the materials used in manufacturing the finished product, is not sufficient to protect the buyer, if there has been no delivery.

4. In passing on the sufficiency of the transfer, there must be taken into consideration the character of the property, the use to be made of it, the nature and object of the transaction, the position of the parties, and the usages of the trade and business.

5. Concurrent possession by the buyer with the seller is no better than no change of possession at all.

6. Where a manufacturing corporation which has agreed to manufacture and sell paper for future delivery, stores the paper in a condition unfinished for delivery in a storehouse on its premises of which it keeps the keys, and insures the paper in the name of the buyer who has paid for it, the delivery is not complete against the rights of the receiver of the insolvent seller.

7. In such case where the bill for the appointment of the receiver did not aver insolvency of the company, but in subsequent proceedings it appears that the company was insolvent when the receiver was appointed, the right of the receiver to the goods in the storehouse was fixed at the time of his appointment.

8. Under such circumstances, where the true state of affairs showing actual insolvency does not appear until subsequently, the rights of the parties are to be determined as if that fact had been originally set forth.

Argued May 9, 1928.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 110, March T., 1928, by the Hygienic Fibre Co., from decree of C. P. Lawrence Co., June T., 1927, No. 1, in equity, in case of W. H. Shipler et al. v. New Castle Paper Products Corporation.   Affirmed.

Bill in equity for appointment of receiver.

Petition by Hygienic Fibre Co., Inc., for order to hand over goods.   Before HILDEBRAND, P. J.

The opinion of the Supreme Court states the facts.

Petition dismissed as to certain goods and decree accordingly.   Petitioner appealed.

*Error assigned,* inter alia, was decree, quoting record.

*W. Walter Braham,* of *Aiken & Braham,* for appellant.—The court erred in finding that the receiver of the New Castle Paper Products Co. stood in the position of an attaching creditor: Muller v. Fire Clay Co., 183 Pa. 450; Finch Mfg. Co. v. Stirling Co., 187 Pa. 596; Hallowell v. Williams, 217 Pa. 501; Schmitt v. Dietterle, 70 Pa. Superior Ct. 238.

A receiver may be appointed for a solvent but embarrassed corporation: Deere Plow Co. v. Hershey et al., 287 Pa. 92, 99; Cowan v. Plate Glass Co., 184 Pa. 1, 9; Blum Bros. v. Bank, 248 Pa. 148, 156; Schipper Bros. v. Coal Co., 277 Pa. 356, 362.

A receiver appointed for a solvent corporation has not the rights of an attaching creditor, but only the rights the corporation would have: Deere Plow Co. v. Hershey, 287 Pa. 92; Blum Bros. v. Bank, 248 Pa. 148.

The court erred in holding that there was not sufficient evidence of delivery to or assumption of control by the Hygienic Fibre Co. over this paper it had bought from the New Castle Paper Products Corporation: Goddard Hill & Co. v. Weil & Co., 165 Pa. 419, 422; McCullough v. Willey, 200 Pa. 168, 172; Clow v. Woods, 5 S. & R. 275; McKibben v. Martin, 64 Pa. 352; McGuire v. James, 143 Pa. 521; Keystone Watch Co. v. Bank, 194 Pa. 535; White v. Gunn, 205 Pa. 229; Riggs v. Bair, 213 Pa. 402; Northrop v. Construction Co., 260 Pa. 15.

*William McElwee, Jr.,* with him *Mont L. Ailey, Graham & Matthews, G. W. Muse* and *Roy M. Jamison,* for appellee.—Appellant's pleadings show a fraud in law: Kaine v. Weighley, 22 Pa. 179; Spering v. Laughlin, 113 Pa. 209; Kingsbury v. Davidson, 112 Pa. 380; Wendel v. Smith, 291 Pa. 247.

The burden was on appellant to prove the solvency of the New Castle Paper Products Corporation at the time the receiver was appointed: Clow v. Woods, 5 S. & R. 275; Wendel v. Smith, 291 Pa. 247.

OPINION BY MR. JUSTICE SADLER, June 30, 1928:

The New Castle Paper Products Corporation, organized in 1925, purchased the manufacturing plant of an earlier concern, issuing its stock in exchange for that of its predecessor. Additional machinery was acquired, and arrangements made for the production of absorbent paper. In March of 1926 it contracted with the Hygienic Fibre Company to sell its output for thirty days, which arrangement, under slightly modified terms, was extended for like periods to October of the same year. By the contract it was provided that payment should be made by the buyer as invoices were received showing the amount of paper manufactured at the mill. This was subsequently to be cut into sizes directed by the purchaser, packed in appropriate cartons, and shipped as might be commanded. Pending the receipt of the orders

necessary to the completion of the seller's obligation, the finished 90-inch rolls were to be stored for the Fibre Company, and, in pursuance of this understanding, they were moved to a warehouse a short distance from the mill and placed therein as rapidly as turned out from the machines.

The storage house was almost entirely devoted to the holding of paper so manufactured, and, at the time of the appointment of a receiver in March, 1927, about 70 tons were in place therein.   A small portion of the entire amount manufactured, but not shipped,—about five per cent of the total,—was in the main mill or shipping room, cut, packed and labeled with the name of the purchaser.   The key to the warehouse remained in the hands of the Products Corporation, as access by it to the rolls was necessary when orders to cut and ship were received.   Insurance was taken out by it for the benefit of the Fibre Company, which reimbursed the former for the expenditure thereby occasioned.   Payments for the cost price, and freight on the portion sent out, were regularly made by the buyer when invoices were forwarded.   In all, $36,000 had been advanced, and paper to the value of $5,000, or more, had been prepared on order and shipped, when this litigation began.

On March 14, 1927, equity proceedings were instituted against the Paper Corporation, averring that its funds had become exhausted, and it was without means to purchase new materials, liquidate its payrolls, or further finance its business.   It was also charged that many of its accounts and bills payable were past due, and creditors were pressing for payment.   Some claimants had brought suit and obtained judgments, and issued, or threatened to issue, executions, and levy on and sell the property of the defendant.   The further averment was made that the assets of the corporation, if properly conserved, were more than sufficient to pay all obligations in full, but that present satisfaction of the outstanding demands was impossible.   The answer filed admitted the

facts set forth, and, after hearing, a receiver was appointed, to report the character and extent of the property, and "the best method of realizing its value for the benefit of those interested," but without authority to continue the business. It was further directed that "all creditors of the defendant are hereby enjoined from any proceeding to enforce collection of their claims, either by way of suit or judgment, or otherwise, until further order of the court."

On April 26th the receiver made report, suggesting that all the assets be exposed to public sale, converted into cash, and be used to liquidate the debts of the corporation, which were found to consist of 28 bonds of $1,000 each in the hands of purchasers, 22 of like amount held as collateral security for a loan of $8,800, and other claims "consisting of accounts and bills payable, including wages due employees of approximately $25,000." As no authority had been given to operate the plant or contract indebtedness by the terms of his appointment, these sums necessarily represent the amounts due when the receiver was put in charge. The inventory filed showed nominal assets, composed almost entirely of the real estate and machinery, valued at a sum in excess of the liabilities set forth. There were also included items for tools, raw material on hand and office fixtures worth $1,125, and finished paper or unfinished material, now claimed by the Fibre Company, appraised at $11,500. The receiver was later directed to make sale of all the property of the paper corporation, and did offer the same on August 4th, and later on the 16th, without receiving a bid therefor. On August 31st, a third attempt to dispose of it resulted in one bid of $1,000. A return to this effect was made to the court on September 5th, and an order entered directing that a further public offering be made.

After the appointment of the receiver, but prior to the completion of the inventory, the Fibre Company presented its petition asking for a rule to show cause why

the paper manufactured and paid for by it should not be delivered. An answer was filed by the receiver, as well as by intervening creditors, denying its right to the property, and averring that the same constituted a part of the assets of the corporation, subject to all claims existing at the time of his selection. After hearing, the court, on July 18th, entered a decree nisi, directing the return of the property on the ground that, in so far as appeared, the corporation was solvent, and the rights of the receiver were no greater than those of the company he represented. It held that, since the seller could not have refused, upon demand of the purchaser, to give up the paper manufactured and paid for, though all of its obligations under the agreement of sale had not been performed, the purchaser could, as to the seller, waive the necessity of further compliance, and the same rule applied when the request was made of the receiver. Exceptions were filed, and later heard by the court in banc. In the meantime it became apparent that the assets of the Paper Corporation could not be disposed of for a sum sufficient to satisfy the indebtedness, and that it was then, and had been, insolvent at the time of the inception of the receivership. It may be observed that, under the Uniform Sales Act, one is insolvent "who either has ceased to pay his debts in the ordinary course of business or cannot pay his debts as they become due, whether he has committed an act of bankruptcy or not": Act May 19, 1915, P. L. 543, section 76. The former decree was therefore set aside, and a final order made, dismissing the petition of the Fibre Company, as to all of the paper which had not been completed by cutting and packing, and designated as its property by marking. This appeal is from the order so entered.

The first question requiring consideration is the legal standing of the receiver. If his rights rise no higher than those of the corporation, and they would not if it was solvent, then the purchaser was entitled to demand that the manufactured paper be delivered to it. If, on

the other hand, his status is the same as an execution creditor, a different question is presented. Had the bill averred insolvency, and the proof showed this to be true, there could be no doubt that the receiver appointed would be treated as is an attaching or levying creditor, and the rights of the parties would be fixed as of the date of his appointment: Deere Plow Co. v. Hershey, 287 Pa. 92; Blum Brothers v. Girard National Bank, 248 Pa. 148. In the present case, however, the bill set forth that there was an excess of assets above liabilities, as did the inventory filed. When the decree nisi was entered, there was nothing of record to indicate the contrary. Before the exceptions were passed upon, three abortive efforts to convert the property into cash were made, and the highest bid received for the plant and machinery, listed as of great value, was but a fraction of the amount required to pay the existing debts, and the insolvency of the corporation at that time, and when the receiver was appointed,—for there had been no increase in liabilities or decrease in value by sale,—was made evident. Under such circumstances, where the true state of affairs showing actual insolvency does not appear until subsequently, the rights of the parties are to be determined as if that fact had been originally set forth: Blum Brothers v. Girard National Bank, supra.

It was averred in the bill filed that the corporation was without funds to meet current indebtedness or to finance its business, which must have indicated to all in interest that the concern was probably insolvent, though it claimed an excess of assets, and that it would likely be necessary to convert the property into cash to pay the debts. The creditors were restrained from proceeding to enforce their rights. Later developments showed the actual condition, and the court did not err in treating the case as a general receivership for an insolvent company, thereby avoiding a preference of one claimant to the prejudice of other creditors. The same conclusion was reached in the case last cited, where the pertinent

authorities have been discussed and explained, making reference thereto unnecessary here.

If the receiver is to be considered, under the facts, as having the standing of an execution creditor, then his rights are to be determined as of the date of his appointment, and he is entitled to possession of all of the property and assets of the insolvent corporation for the benefit of the creditors as their interests may appear. In determining whether title to the paper passed, there having been no actual delivery though paid for, it is first to be noticed that the sale was not here complete even as between the parties themselves, for the buyer could not have been compelled to accept it in satisfaction of the contract obligation until it had been cut and packed in accordance with directions given. The Uniform Sales Act (May 19, 1915, section 19, Rule 2, P. L. 543) provides: "Where there is a contract to sell specific goods and the seller is bound to do something to the goods, for the purpose of putting them into a deliverable state, the property does not pass until such thing be done." With this clause, section 76 must be read. It says, in part: "Fourth. Goods are in a 'deliverable state' within the meaning of this act when they are in such a state that the buyer would, under the contract, be bound to take delivery of them."

In other jurisdictions, where the like Uniform Sales Act is in force, it has been held that the transaction is not consummated so as to pass title until all acts engaged to be performed have been completed, for example, where the seller agreed to bottle liquor purchased (Kahn v. Rosenstiel, 298 Fed. 656), to bale hay (Shultz & Co. v. De Hood, 185 N. Y. Supp. 785), to cut and float logs (Barton & Co. v. Trumbull, 226 Mich. 685, 198 N. W. 186), or dismantle machinery bought: Pulkrebek v. Bankers Mtg. Corp. (Ore.), 238 Pac. 347. "It is not necessary that the work to be done by the seller shall be such as to change the character of the goods. An obligation to pack or load them will make the presumption [that

title has not passed] applicable if the seller's undertaking was to sell the goods packed or loaded": 1 Williston on Sales 532.   In the present case, the transaction was not complete, in so far as the corporation was concerned, until the 90-inch rolls in storage had been reduced to the desired sizes, packed and shipped.   This was an obligation which the buyer could waive, having paid in full for the paper, but it could not do so after the rights of the receiver had attached, so as to withdraw the property from his grasp.

Assuming there was a completed sale, as insisted upon by the appellant, there was no actual delivery of possession.   The most that can be urged is that it was a constructive one.   Section 26 of the Uniform Sales Act provides: "Where a person having sold goods continues in possession of the goods, or of negotiable documents of title to the goods, and such retention of possession is fraudulent in fact or is deemed fraudulent under any rule of law, a creditor or creditors of the seller may treat the sale as void."   From the early case of Clow v. Woods, 5 S. & R. 275, to the latest declaration in Wendel v. Smith, 291 Pa. 247, it has uniformly been held in this State that there must be an actual or constructive delivery of property sold to protect against attaching or levying creditors of the seller, and, if nothing be shown which indicates an adequate change of possession, the transfer will constitute, as to them, a legal fraud.   (The Pennsylvania Rule, with the applicable authorities, is the subject of careful consideration in 1 Williston on Sales 934.)   This is true, irrespective of the good faith of the purchaser, who has paid the full price agreed on: Stephens v. Gifford, 137 Pa. 219.   If he advances the consideration for goods bought without taking possession, he assumes the risk of the integrity and solvency of his vendor when the rights of bona fide purchasers or execution creditors arise, for delivery, actual or constructive, is indispensable to transfer a title that shall be effective against such parties:  Root v. Republic Acceptance

Corp., 279 Pa. 53.   The mere payment of the selling price, or for the materials used in manufacturing the finished product, is not sufficient to protect the buyer: Enterprise Wall Paper Co. v. Rantoul, 260 Pa. 540.

In passing upon the sufficiency of the transfer, there must be taken into consideration the character of the property, the use to be made of it, the nature and object of the transaction, the position of the parties, and the usages of the trade or business: White v. Gunn, 205 Pa. 229.   Cases arise where an actual delivery is not practicable, because of the relation of the parties, who have joint possession of the place of deposit (McKibbin v. Martin, 64 Pa. 352), where the party holding is a mere bailee, the ownership being in the bailor who has shipped on consignment (Keystone Watch Case Co. v. National Bank, 194 Pa. 535), where the articles are of a character to make physical removal impracticable (Chase v. Ralston, 30 Pa. 539; White v. Gunn, supra), or where the articles purchased have been plainly set aside and appropriated to the use of the buyer in such manner as to negative any possible misleading of a purchaser or creditor: Riggs v. Bair, 213 Pa. 402.   "The delivery must be actual and not merely symbolical where actual delivery is practicable, and if it is not practicable the parties should leave nothing undone to secure the public from deception": Barlow v. Fox, 203 Pa. 114, 118.

Appellant here insists that constructive possession was given by placing the paper in a storehouse, separate from the mill, and insuring in the name of the purchaser. The key to this building was held by the seller, and it alone had access to the contents, which were not marked in any way as the property of the Fibre Company.   Even "a concurrent possession with the seller is no better than no change at all": 1 Williston on Sales 943.   Five per cent of the finished goods found in the mill and shipping room were properly segregated in the name of the buyer, but this portion was awarded to the petitioner by the final decree entered, and with it we are not concerned.

The deposit of the manufactured product in the adjoining wareroom did not indicate to outsiders that there had been a change in possession, and as against those who furnished credit to the Paper Company by supplying money, materials or labor, was no notice that it did not remain the actual owner. This retention constituted a fraud in law, and, as to the creditors, acting through the receiver, was ineffective to transfer title. It follows that the property claimed by appellant is part of the assets of the Paper Corporation, and cannot be surrendered to the purchaser, who must make claim, as any other creditor, to a distributive share in the insolvent estate.

The decree is affirmed at the cost of appellant.