First Nat. Bank & Trust Co., Appellant, *v.* Jaffe.

Argued April 30, 1934.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Edward J. I. Gannon* of *Hazlett, Gannon & Walter,* for appellant.

*Maurice L. Avner,* for appellee.

*A. W. Wolk,* and with him *Benjamin Diamond,* for appellee.

OPINION BY BALDRIGE, J., July 13, 1934:

This appeal is from the decree of the court below refusing to grant an injunction restraining the collection of money due on certain book accounts and bailment leases, and to order an accounting.

Frank Jaffe conducted a retail furniture business in Tarentum. In 1926 he made a loan from the Safe Deposit Bank and Trust Company, which subsequently consolidated with another institution and is now known as the First National Bank & Trust Company of Tarentum, the appellant herein. As collateral security for this loan, he executed a written assignment to the bank of certain bailment leases obtained in his business of selling furniture on the installment plan, and agreed that if any of the leases be paid off he would replace them with additional leases so that those assigned should always be twice the indebtedness. Jaffe kept copies of the leases, and under an arrangement with the bank he was to make collections thereon and monthly payments on account of his indebtedness. Under this plan, the note was reduced from time to time by payments on account, when Jaffe would withdraw a portion of the leases. When he required additional funds, he would bring in new leases and obtain an increase of his loan.

On February 5, 1931, the original indebtedness was increased to $7,500, and Jaffe executed a new collateral note. This note stated that the maker does "pledge herewith as collateral security for the pay-

ment of this note, as well as for the payment of all other indebtedness or liability of the undersigned to the holder hereof ...... the following described property, namely, assignment of leases and accounts pledged, with the usual comprehensive rights of the bank to sell without notice,'' etc.

Jaffe died on December 4, 1931, and Sadie Jaffe, his widow, was appointed his administratrix. Attached to the inventory of the decedent's estate filed was a schedule containing a list of leases, designated by number, names of lessees, and amounts unpaid. The leases were stated to have an original face value of $19,090.75, subject to an unpaid balance of $5,557.79 due the First National Bank & Trust Company of Tarentum.

On February 4, 1932, the administratrix entered into an agreement with Joseph A. Shenkan, whereby she sold him the stock and goods owned by her husband, and all other unassigned leases, together with any equity that the estate of Frank Jaffe might have in the leases held as collateral security by the bank. Shenkan agreed in this contract to assist the bank in the collection of the ''accounts and leases'' held by it as collateral security for the Jaffe loan, in order that it might be reduced or completely paid. Shenkan made collections on a portion of the leases and accounts, and repossessed certain furniture that had been leased by Jaffe in the course of the continuation of the business. He deposited in plaintiff's bank, to his own account, the sum of $2,180, collected from the general business, including payments on leases and accounts in possession of the bank.

On May 1, 1932, Shenkan made an offer to the bank to pay the balance due on the Jaffe note in consideration of its cancellation and delivery of the collateral to him. This was accepted by the plaintiff, but Shenkan later refused to carry out his offer, claiming that

he had discovered, after he made his proposition, that there was no valid assignment of the original leases in the hands of the bank. On May 21, 1932, the bank appropriated $2,180.21, the balance in the Shenkan account, to the payment of Jaffe's debt. On June 15, 1932, the plaintiff caused the leases and accounts held by it to be sold under the terms of the collateral note, and the bank purchased them for $200, which it credited to the Jaffe note. The bank claims a balance due on the note of $2,612.56, with interest.

A bill in equity was filed against Sadie Jaffe, administratrix of the estate of Frank Jaffe, and Joseph A. Shenkan, praying for an injunction restraining defendants from collecting money on the leases and accounts assigned to it, and that the defendants be ordered to account to the plaintiff for all sums received thereon. The chancellor below, after hearing, held that while the attempted pledge was made in good faith, it was invalid against creditors; that the papers lodged with the bank (some of which he found were originals and some copies) were accounts and not leases; that in order to be effective, a written assignment of each account and lease should have been made, delivered to the bank and noted on the pledgor's books, and, therefore, they belong neither to the bank nor to Shenkan, but to the estate of Frank Jaffe, who died insolvent; that the appropriation by the bank of Shenkan's account was illegal and that he was entitled to a decree against the bank to pay him the amount appropriated, with interest. He further ordered that the case be retained, except as to the claim of Joseph Shenkan, against the plaintiff, and that Sadie Jaffe, administratrix, file her answer, setting up new matter in the nature of a cross-bill, asking for a decree against Shenkan for an accounting of money collected by him on the accounts attempted to be pledged to the bank, so that the rights of the cred-

itors might be protected. This decree was affirmed by the court sitting in banc.

The record before us is in an unsatisfactory shape. The bill had attached a "statement of leases and accounts pledged to secure loans of Jaffe Furniture Co." This statement was not offered in evidence. There was offered and received a "group of papers," in the form of leases signed by the lessees, marked "Exhibit 4," and a "group of papers" identical in form to the others included in "Exhibit 4," except they were unsigned, marked "Exhibit 3." Neither of these exhibits is printed. It is, therefore, impossible for us to determine whether these so-called leases were included in the exhibit attached to the bill, for which an accounting was prayed for. The appellee, Shenkan, states in his paper book that the signed leases only are those for which an accounting is asked. It appears throughout the record that the parties treated the unsigned leases as "accounts." Frank C. Irvine, an officer of the bank, testified that Shenkan was collecting payment on the "leases" and that he furnished a statement of his collections that he had made on the leases, which was offered in evidence as "Exhibit 5," but it also was not printed. J. A. Williams, who represented Shenkan in the Jaffe Estate in the sale of its assets, who was called by the attorney for Shenkan, testified that he had charge of all the transactions for Shenkan in connection with the purchase from the Jaffe Estate; that he submitted to the bank a statement representing furniture and property, which Shenkan repossessed, and money received on account of the "leases," totalling $2,474, which he understood at that time belonged to the bank.

On the one side of each signed lease there appears the name and address of Jaffe's customer, with the charges and credits. On the other side there is a printed form of a bailment lease, with none of the

blanks filled in as to amount, date or period of payment, which were designated and distinguished by number, and name of lessee. While these leases are in this incomplete condition, under the plaintiff's testimony they were the original contracts. An assignment of a chose in action need not be in any particular words or be a specific form of instrument. It is but required to show the intention of the owner to assign and transfer: McCleery v. Stoup, 32 Pa. Superior Ct. 42; Fett's Est., 39 Pa. Superior Ct. 246; 5 C. J. 906. There can be no question from the writings that it was the intention of the parties to effect an assignment to the bank as collateral security of the delivered leases. We concede, however, that neither intent nor good faith alone would be availing in the absence of delivery, either actual or constructive, of the property pledged.

Two witnesses, employes of Jaffe, and subsequently retained by Shenkan, who had charge of the books, testified for the defendants that they knew a considerable number of leases and accounts were turned over to the bank, but that they had no knowledge of which were transferred, until ten days after Jaffe's death. One of them testified, however, that she visited the bank a couple of times at the request of Jaffe to see if the records as to the leases and accounts corresponded with his records; that on their books there was no separation of the leases or any notation of their being pledged until Shenkan took charge of the business. Then the accounts and leases assigned to the bank were segregated and a separate record kept of the payments made on account thereof.

The delivery of the property to the pledgee may be made either actually or constructively. In order to be effective against third persons, delivery must be made in such a manner and be accompanied by such change of possession as the nature of the property and

the circumstances reasonably permit. If the property is capable of manual delivery, it should be so made. But the manual taking possession of the property pledged, where it is impracticable, is not always essential to the validity of the pledge. If it is incapable of, or inconvenient for, an actual delivery, then a symbolical delivery may be made by giving a writing which sufficiently describes the property pledged, to identify it. In Elliott's Est., 312 Pa. 493, 167 A. 289, it was held that the handing over of the keys of a safe deposit box with intent to make a gift was a valid constructive or symbolical delivery of the property to which they gave access. See, also, 49 C. J. 914. It has been held that a partner may pledge his interest in the partnership to secure a loan of money which is put into the firm as part of his capital; and if the pledgor, by agreement, retains possession, the pledgee's right is superior to the claims of general creditors and others claiming under the pledgor, except pledgees for value without notice: Wallace's App., 104 Pa. 559. It would not be practicable for the pledgor to deliver to a bank the books which contain, not only the accounts pledged, but also many other accounts. The law does not require the performance of unreasonable acts.

Assuming the unsigned leases, or, in other words, the accounts, are involved in this proceeding, they are valid in so far at least as Shenkan is concerned, as he admittedly had prior knowledge of the transaction. We recognize the binding effect of those decisions which hold that delivery of copies of accounts without any assignment is invalid as that is not an actual or constructive delivery of the accounts to the pledgee. See American Exch. Nat. Bank v. Fed. Nat. Bk., 226 Pa. 483, 75 A. 683. But if Jaffe delivered to his creditor a number of original accounts, sufficiently designated, and executed a written assignment thereof,

we can see no sound reason in holding that each individual account was required to be separately assigned.

Furthermore, in the case before us the administratrix filed her final account, which was duly confirmed. No exceptions have been filed thereto by any creditor. Shenkan, the appellee, in his paper book, concedes that if the rights of creditors were not involved, the assignment would be valid, and then proceeds to argue that the rights of creditors are not affected as he owns all the estate's equity in the leases, having "bought all the creditors had to sell."

The administratrix had no standing to appeal from the court's decree as she is not a "party aggrieved," "so long as the decree does not surcharge him (her) or make distribution of an amount larger than the admitted balance due the estate": Hand's Est., 288 Pa. 569, 136 A. 864. See, also, Wick's Est., 50 Pa. Superior Ct. 614. She admits in the fifth paragraph of her answer that all the estate's equity in the accounts receivable and bailment leases was sold to Joseph Shenkan. It is true, of course, that a petition to the orphans' court may be made for review of a confirmed account, if it be shown that either an error of law is apparent on the face of the record or that new evidence was subsequently discovered as to the facts upon which the decree was founded, which could not have been procured by due diligence: Est. of Helen Turnbull, 88 Pa. Superior Ct. 482. The learned court below committed error in attempting to inject contingent rights, neither presented by the parties claiming them, nor for whom relief was sought. The only issue raised was whether this plaintiff was entitled to an accounting from Shenkan. It is not within this jurisdiction in the circumstances before us to direct an administrator to collect what that court may think an asset belonging to the estate of Frank Jaffe. The

order of the orphans' court, in so far as that account is concerned, is binding. While a court of equity has broad powers and may consider collateral questions which may be involved in the proceeding before it, this rule is inapplicable concerning matters that are beyond its powers and within the exclusive jurisdiction of the orphans' court. This principle is recognized in Cella v. Davidson et al., 304 Pa. 389, 395, 156 A. 99. Mr. Justice SCHAFFER, speaking for the court, said: "Appellees argue that the principle applies that equity having jurisdiction as to part of a controversy will round it out and afford full relief. This principle would apply if the court had proceeded to adjudicate the matter over which it had jurisdiction and as incidental to complete relief in respect to it had disposed of the other matters averred in the bill, but here, as before stated, the court did not act upon the matter which gave it dominion over the case, but only on the incidental subjects over which in themselves it was without power."

To recapitulate, we have before us an assignment for a valuable consideration of leases and accounts, which are the only primary evidence of the indebtedness of the lessees transferred to the creditor bank; moneys advanced in consideration therefor; Shenkan's knowledge of the transaction between the bank and Jaffe; no question raised by the creditors concerning any alleged rights; the lessees not attacking the validity of their contracts, but recognizing their existing obligations, notwithstanding their incompleteness, by making payments thereon from time to time; the lack of any proof that, when the leases and accounts were assigned, or the note was given on the 5th of February, 1931, Jaffe was insolvent.

Our conclusion is that whatever value the leases and accounts possessed, and the money paid thereon, belonged to the bank; that this case should be returned

and an accounting ordered by Shenkan of the moneys he has received as an agent representing the bank on the leases and the accounts in the possession of the bank, and if the moneys so collected are in excess of the amount the bank applied to Jaffe's indebtedness from Shenkan's account, Shenkan should account therefor to the bank. If the collection made by Shenkan on the Jaffe leases and accounts does not amount to the sum the bank appropriated from his account, it should repay Shenkan with interest.

Judgment of the court below is reversed and it is ordered that an accounting be had in accordance with the conclusions expressed in this opinion. Costs to be paid by Shenkan.