Schooley *v.* Schooley and Company, Inc. (et al., Appellant).

508

Argued December 4, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Henry A. Gordon,* with him *T. G. Wadzinski,* for appellant.

*R. J. Doran,* with him *Richard B. Sheridan* and *Reynolds, Reynolds & Doran,* for appellee.

OPINION BY MR. JUSTICE JONES, January 6, 1947:

This case is concerned with the distribution, among creditors, of the net assets of an insolvent corporation, in liquidation. The appellant (a deceased creditor's estate) claims a right to priority of payment to the extent that the fund for distribution represents the proceeds from the sale of corporate real estate upon which the claimant had a first lien by virtue of a judgment confessed against the corporation. The appellee (an unsecured creditor) not only imputes invalidity to the asserted lien but denies any right in the appellant to share, even as a general creditor, in the corporation's net assets for distribution. The questions involved arise out of the following circumstances.

On June 9, 1938, Schooley and Company, Inc., being in need of funds, applied to O. B. Pettebone, a director of the company, for assistance. Mr. Pettebone (since deceased) made and delivered to the company, without

consideration, his promissory note to the company's order for $7,500. At the same time the company, pursuant to action by its board of directors, made, executed and delivered to Pettebone, as security for his loan of credit, its judgment note for an equal sum. The company thereupon negotiated the Pettebone note for full value at the Second National Bank of Wilkes-Barre, and the proceeds of the loan were placed to the credit of the company. On May 12, 1939, Pettebone caused a judgment in his favor to be confessed in the Court of Common Pleas of Luzerne County against Schooley and Company, Inc. on the judgment note.

On May 27, 1939, H. B. Schooley, the sole stockholder, and likewise a director, of Schooley and Company, Inc., filed his petition in the Court of Common Pleas of Luzerne County for the appointment of a receiver for the company. He averred that, while the assets of the company greatly exceeded its liabilities, it was without funds to meet its obligations, most of which were overdue; that it was threatened with suits which would result in the dissipation and destruction of its assets; and that it was in need of court protection and a receiver for the conservation or liquidation of its business and assets, as might be indicated in the circumstances. The company admitted the averments of the petition, and the court granted the relief sought. The receiver subsequently sold the company's real estate with court approval and, on July 2, 1943, filed his first and partial account which was confirmed nisi on the same day. Not more than a thousand dollars' worth of property remained for a final accounting later.

The First National Bank of Wilkes-Barre, a general creditor of Schooley and Company, Inc., filed exceptions "to the allowance of the claim [$7,500 judgment] of O. B. Pettebone Estate as a preferred claim". There was an unexplained delay in bringing the account on for audit, but, once heard, the hearing judge duly audited the receiver's account and contemporaneously filed an

adjudication. Thereby the Pettebone estate was denied any right to participate in the funds of Schooley and Company, Inc. for distribution, either as a preferred or as a general creditor of the company. Upon exceptions to the adjudication by Elizabeth M. Pettebone, executrix of the will of O. B. Pettebone, deceased, the matter was heard by the court en banc which, aside from reversing one finding and consequent conclusion of the auditing judge, entered a final decree confirming the result with respect to the Pettebone claim. This appeal by the executrix of O. B. Pettebone's will followed.

The court below based its action on the grounds (1) that the Pettebone estate could not claim on its judgment inasmuch as the Second National Bank had made claim against the Schooley company on its endorsement of the Pettebone accommodation note (i.e., had claimed "for the same debt") and (2) that the Pettebone estate was not entitled to realize upon the judgment security before the estate had been called upon by the holding bank to pay the Pettebone note or any part of it. The learned auditing judge had ruled to like effect in both regards and, in addition, had found that the Schooley company was insolvent when it gave the judgment note to Pettebone. Accordingly, the auditing judge had also concluded, in effect, that the judgment note was an illegal preference and therefore not entitled to priority of payment. However, the court en banc, of which the auditing judge was a member, unanimously overruled the finding as to insolvency and, with like unanimity, found that "at the time the judgment note was given to Pettebone, the defendant corporation was solvent and it was proper enough for the company to give and Pettebone to take the note of indemnity".

In the view we take of the case, neither of the above-numbered conclusions is material to the correct disposition of the Pettebone claim. Indeed, the finding that the Schooley company was solvent when it gave its judgment

note to Pettebone is equally immaterial. So long as the company received full value for the security it thus gave, the judgment note was not an unlawful preference even though the company was insolvent. A transfer by an insolvent debtor that does not reduce the value of his estate, in that he receives in exchange full value for his transfer, is not a preference as that term is known to the law of bankruptcy or insolvency. See 3 Collier on Bankruptcy, 14th Ed., par. 60.19, pp. 818-819. It is "the appropriation by the insolvent debtor of a portion of his property to the payment of a creditor's claim, so that thereby the estate is depleted and the creditor obtains an advantage over other creditors" that constitutes a voidable preference under the Bankruptcy Act: see *Newport Bank v. Herkimer Bank,* 225 U.S. 178, 184. And, our State law proceeds upon the same conception. Slight difference is to be found between the National Bankruptcy Act and our State's Insolvency Law in the matter of the application of equitable principles to the distribution of insolvent estates among creditors: cf. *Emlen's Estate,* 333 Pa. 238, 242-243, 4 A. 2d 143.

The judgment note in the present instance is rightly to be taken as having been valid when given; and, had it been entered of record then, or even at any time up until four months prior to the company's established insolvency, the judgment and its concomitant lien would have been unimpeachable: Sec. 2 of the Act of June 4, 1901, P. L. 404, 39 P.S. § 154. But, Pettebone chose to withhold the entry of judgment against the company (i.e., virtually secreted his security) until a time when, by reason of the debtor's currently evident insolvency, the law required that "such judgment . . . or encumbrance . . . inure to the benefit of all the creditors of [the] insolvent": Sec. 2 of the Act of 1901, 39 P.S. § 152. More fully, the cited section of the statute provides, in part presently material, that "If any . . . corporation, being insolvent or in contemplation of insolvency, with a view to give a preference to any . . . person . . . who

is under any liability for, such insolvent, shall . . . suffer or permit any judgment to be entered, by confession or otherwise, . . . or shall make any . . . encumbrance [of its property] . . . for a debt then existing or about to be created, and if the aforesaid be known to such creditor, who thereby collusively attempts to obtain for himself . . . a preference over other creditors, such judgment, . . . or encumbrance shall inure to the benefit of all the creditors of such insolvent, if . . . proceedings in insolvency be commenced within four months after such judgment, . . . or incumbrance shall have been entered, . . . or recorded, . . .".

The judgment was entered on May 12, 1939, and, only fifteen days later, the sole stockholder petitioned the court for the appointment of a receiver of the company upon averments that indisputably disclosed that the company was then insolvent. Those averments were forthwith formally admitted by the company in an answer filed for it, pursuant to corporate action, Pettebone, as well as the petitioning stockholder, being a director of the company. A receiver was then (May 27, 1939) appointed as prayed for, and the liquidation of the company was begun. It is true that the stockholder's petition averred that the company "has property and assets of large value, and greatly in excess of the total amount of its indebtedness", but that vague and indefinite generality is of no legal significance in the face of the irrefutable inference of insolvency to be derived from specific averments of the petition. Thus, the petition further averred that the company's assets are "not now liquid and available [i.e., are presently insufficient, as a matter of law] for the payment of its indebtedness"; that the company "is unable to meet its . . . obligations and indebtedness" (a specific act of insolvency: Sec. 7, Act of 1901) ; that threatened actions at law by creditors "will . . . impair [the company's] assets"; and that "unless this Court . . . take the assets of the [company] into control for the protection of every interest therein,

. . . the result will be the dissipation and destruction of the value of such assets". In addition to the foregoing, corroboration of the company's existing insolvency is also to be found in what the receivership soon disclosed: see *Shipler v. New Castle Paper Products Corporation*, 293 Pa. 412, 418, 143 A. 182; *Blum Brothers v. Girard National Bank*, 248 Pa. 148, 154, 93 A. 940.

In a preliminary report filed by the receiver (pursuant to the decree appointing him), with respect "to the character and extent of the property of the defendant, the interest in and known claims against it, its income-producing capacity, and the best method of realizing its value for benefit of those interested", the assets of the company were shown to consist of $4,994.40 worth of personalty, real estate of an appraised value of $15,-239.50, and accounts receivable in an aggregate amount of $23,598.05, "consisting of mortgages . . . open accounts and judgments, *a large portion* of which is unsecured and *probably uncollectible*". (Emphasis supplied). On the liability side, the company's books showed that it owed $25,125.82. Yet, it had on hand when the receiver took charge *only* $1,674.80 in cash. During the relatively brief period of time that the receiver operated the company he did no more than perform work on uncompleted orders in process of construction and make incidental sales from stock to casual customers. He did not take new business. Nor did he replenish the company's supplies or inventory in any amount. With the liquidation of the company substantially completed, the cash on hand available for distribution to creditors proved to be less than half of the total claims allowed against the company, not including, of course, the Pettebone claim. Thus, the undisputed facts of the case reveal that the insolvency of the company was definitely established upon the institution of the receivership on May 27, 1939, which at once became an insolvency proceeding subject to the provisions of the Act of 1901.

The case presents, therefore, the entry of a judgment against a corporation (while insolvent or in contemplation of insolvency), within four months of the institution of insolvency proceedings against it, where the creditor had withheld entry of judgment on the debtor's note for a year after the obligation had been created and the effect of the judgment, as known to the confessing creditor, would be to give him a preference over general creditors of the debtor. The thing of special importance in the given circumstances is the creditor's effort to obtain a preference on the basis of an antecedent obligation or undertaking when the fact of the debtor's insolvency had become apparent. For that situation the law imputes to the debtor an intention to confer a preference and to the creditor knowledge of the facts making for the creation of an unlawful preference. Sec. 2 of the Act of 1901 expressly provides that "A presumption of such knowledge [on the part of the creditor] and intention [on the part of the debtor] shall arise, by reason of the fact of such insolvency, if . . . such judgment . . . or encumbrance shall not have been entered, issued, commenced, made or recorded, . . . at or about the time of the creation of the debt, . . .": 39 P.S. § 153. In passing, it may be noted that, in addition to Pettebone's legally presumed knowledge, the record shows that, as a director of the close corporation, he must have known of the debtor's insolvency when he entered the judgment note and that the operation of the judgment, if permitted effect, would be to give him a preference over general creditors of the debtor. When Sec. 2 of the Act of 1901 is applicable, as in the present instance, where the creditor's effort to obtain a preference affirmatively appears, it is unnecessary to prove the debtor's intent in fact "to give a preference", as is the requirement under Sec. 1 of the Act: cf., e.g., *Clark's Assigned Estate*, 38 County Court Rpts. 227, s.c. sub nom. *Graham's Account*, 20 District Rpts. 887; *Assigned Estate of Owen H. Wright and Wife*, 31 Lancaster County Rpts. 154.

On the question here involved as to the enforceability of Pettebone's judgment and its lien, the learned court below reached the correct result although not for the reason upon which we base our conclusion.

The appellee argues that the appellant is without standing to complain of the action taken by the court below; that the Pettebone estate seeks only security against liability on the Pettebone accommodation note; and that the holder of that note, because of its failure to comply with the requirements of Sec. 34 of the Act of 1901, cit. supra, has lost the right to proceed against the Pettebone estate on the accommodation note. Obviously, that question is not presented by the instant proceeding. We, therefore, purposely refrain from considering or discussing it.

The decree is affirmed at the appellant's costs.