**In re H.K. PORTER COMPANY, INC., Debtor.**

**DELTA STAR, INC., Movant,**

v.

**H.K. PORTER CO., INC., Respondent.**

**H.K. PORTER COMPANY, INC., Movant,**

v.

**DELTA STAR, INC., Respondent.**

Bankruptcy No. 91–468PGH.
Motion Nos. MML–1, MML–3.
Motion No. SCBS–89.

United States Bankruptcy Court, W.D. Pennsylvania.

June 23, 1995.

Philip E. Beard, Pittsburgh, PA, for debtor.

Jeffrey G. Brooks, Pittsburgh, PA, for Delta Star, Inc.

## OPINION

WARREN W. BENTZ, Chief Judge.

### Background

H.K. Porter Company, Inc. ("Porter" or "Debtor") filed its voluntary Petition under Chapter 11 of the Bankruptcy Code on February 15, 1991. On July 9, 1993, Porter filed, at Motion No. SCBS–71, its motion for authority to settle litigation which had been pending for many years against Metropolitan Dade County for the amount of $1,200,000 and for authority to pay its attorney a 50% contingency fee out of the settlement proceeds. The proposed settlement and payment of the contingency fee was approved by Order dated August 19, 1993.

Delta Star, Inc. ("Delta Star") subsequently has claimed entitlement to the settlement proceeds. Presently before the Court are Delta Star's MOTION TO PARTIALLY VACATE AND MODIFY ORDER OF COURT

DATED AUGUST 19, 1993 AND FOR SUPPLEMENTAL RELIEF (Motion No. MML–1) and MOTION TO ABSTAIN PURSUANT TO 28 U.S.C. § 1334(c) OR IN THE ALTERNATIVE TO CONVERT TO AN ADVERSARY PROCEEDING (Motion No. MML–3). In addition, Delta Star filed a MOTION TO WITHDRAW REFERENCE at Motion No. MML–2, which was denied by the United States District Court for the Western District of Pennsylvania at Civil Action No. 94–0441.

Also pending at Motion No. SCBS–89 is Porter's MOTION FOR SANCTIONS AGAINST DELTA STAR FOR WILLFUL VIOLATION OF THE AUTOMATIC STAY PURSUANT TO BANKRUPTCY CODE § 362(h).

A telephonic hearing was conducted on February 9, 1994 to consider Motion No. MML–1. By Order dated February 14, 1994, we determined that Motion No. MML–1 would proceed as a contested matter, without prejudice to the filing of a motion by a party in interest requesting conversion of the matter to an adversary proceeding and further required Porter to hold the proceeds of the settlement in a segregated interest-bearing account until final disposition of the matter. By the same Order, we fixed a period for discovery and a schedule for the filing of pretrial statements and fixed a pretrial conference.

On April 5, 1995, Delta Star filed Motion No. MML–3. On April 7, Porter filed Motion No. SCBS–89. A hearing on both motions was held on April 21, 1994 at which time, it appearing that the facts were not in dispute, the Court indicated that it would issue a dispositive ruling on all of the matters presently pending before the Court.

On May 10, 1994, at Porter's request, the discovery and pretrial scheduling order was stayed. We find that there are no material facts in dispute and, for the purposes of this Opinion, we accept the facts alleged by Delta Star as true. We find that the pending matters are ripe for decision without the need for any further proceedings.

*Facts*

In 1981, Porter initiated litigation in the United States District Court for the Southern District of Florida against Metropolitan Dade County captioned *H.K. Porter Company, Inc. v. Metropolitan Dade County*, No. 81–2766–CIV–EDB (the "Litigation" or "Dade County Litigation"). In the Litigation, Porter challenged the constitutionality of a minority business enterprise set-aside provision in connection with a contract for electrified rail for the Metro-rail in Miami, Florida. Porter's low bid was rejected due to the minority set-aside provision. Had the contract been awarded to Porter, it would have been performed by its division located in Lynchburg, Virginia[1] ("Lynchburg"). Porter's policy was to allocate certain percentages of its legal costs to its various divisions. Between 1980 and late 1988, Porter assessed Lynchburg legal costs in excess of $140,000 in connection with the Dade County Litigation. The financial records of the Lynchburg operations reflected the allocated expenses associated with the Litigation.

In 1988, Porter elected to "spin off" its Lynchburg and Belmont, California divisions into a separate corporate entity wholly owned by Porter. To accomplish this, Porter and Delta Star entered into an agreement dated July 1, 1988 entitled GENERAL CONVEYANCE AND ASSUMPTION OF LIABILITIES pursuant to which Porter sold to Delta Star the assets of its Lynchburg and Belmont, California divisions in exchange for all of Delta Star's common stock (the "Agreement").

The Agreement provides that Porter:

in consideration of the issue and delivery to Transferor by DELTA STAR, INC., a Delaware corporation (hereinafter called "Transferee"), of 1,000 shares of common stock, $1.00 par value, of Transferee, constituting all of the issued and outstanding Capital stock of Transferee as of the date hereof, and in further consideration of the assumption by Transferee of certain of the

---

1. We accept this allegation by Delta Star as true, even though Porter alleges that its Chicago Division had submitted the low bid.

debts, liabilities and obligations of Transferor as hereinbelow provided, has granted, bargained, sold, assigned, conveyed, transferred and set over and does hereby grant, bargain, sell, assign, convey, transfer and set over to Transferee, its successors and assigns, forever, all of the right, title and interest of Transferor in and to the following assets and properties of Transferor as the same exist on the date hereof:

. . . . .

D. All claims, demands, judgments, rights choices (sic) in action, equities, accounts receivable, bills and notes receivable, credits, cash on hand or in banks, debts, bills, discounts pre-paid items and other intangible assets which are reflected on the books of Belmont and Lynchburg.

As of July 1, 1988, the Litigation had been the subject of numerous adverse rulings against Porter. The Court of Appeals for the Eleventh Circuit had affirmed the District Court's dismissal of the case and Porter had petitioned the United States Supreme Court for a writ of certiorari.

In November, 1988, Porter completed the "spin off" by selling to Delta Star Acquisition Corporation ("DSAC") all of the Delta Star common stock owned by Porter for payment of $8,000,000. DSAC is an employee stock ownership plan company formed by the employees and management of Delta Star.

After July, 1988, Porter continued to prosecute and pay the expenses incurred in prosecuting the Litigation. After the grant of certiorari and a remand by the United States Supreme Court, a settlement of the Litigation was proposed. On July 9, 1993, Porter filed its MOTION FOR APPROVAL OF SETTLEMENT AND COMPROMISE which was approved by this Court on August 19, 1993. Thereafter, Porter received net proceeds of $600,000 after payment of a contingency fee to its attorneys.

John C. Balsley, Chief Financial Officer of Delta Star, submitted an Affidavit which provides:

12. After July 1988, in the course of performing my duties as Chief Financial Officer for Delta Star, I had occasion from time to time to contact and speak with Edward Ashton, formerly a colleague of mine at Porter, and other members of Porter's accounting department. Mr. Ashton had advanced through the ranks of the Porter accounting department to become, by the time of Porter's bankruptcy filing, President of the Company. Generally, those contacts were for the purpose of obtaining information or to provide or request assistance or clarification regarding various transactions or other record-keeping or accounting matters relating to assets transferred to Delta Star. I cannot recall the precise dates of those conversations other than to state that they occurred from time to time between 1988 and 1993. I do recall that, also from time to time, I specifically raised the subject of the Dade County Litigation in those conversations. Typically, Mr. Ashton advised me that there was no news to report.

. . . . .

15. On July 15, 1993, Mr. Patton told me that he had developments in the Dade County Litigation. Mr. Patton instructed me to contact immediately counsel in the Dade County Litigation (Attorney Charles Kline) both for a clarification of the status of that case and to assure that he was aware that the right to any proceeds of that case belonged to Delta Star.

16. I discussed with Attorney Kline that it was Delta Star's position that only it had the right to control the settlement of the Dade County Litigation. I told Mr. Kline the Dade County Litigation itself and the attendant right to receive the proceeds of any award or settlement belonged exclusively to Delta Star. I confirmed my telephone conversation with Mr. Kline in my letter dated July 16, 1993. (Exhibit D to Delta Star's Motion to Partially Vacate and Modify Order of Court Dated August 19, 1993). As indicated in that letter, Mr. Kline had advised me that H.K. Porter had taken the position that the Dade County Litigation and any settlement or award in that case would be considered the property of Porter. At no point in our discussions did Mr. Kline tell me that, in fact, a settlement agreement had been reached and

that Porter was in the process of requesting the approval of that settlement in the Bankruptcy Court.

17. I told Mr. Kline that, pursuant to the Conveyance Agreement, the Dade County Litigation had been assigned to Delta Star and that Delta Star expected that Porter would abide the terms of the Conveyance Agreement.

In his Affidavit, Andrew D. Patton, Chairman and Chief Executive Officer of Delta Star, states:

13. I had instructed Delta Star's Chief Financial Officer John C. Balsley to keep track of any potential developments in that case. I instructed Mr. Balsley to do this because I was aware that he was the individual at Delta Star who most often had reason to contact Porter on various matters. I have read Mr. Balsley's Affidavit and hereby verify that his description of his conversations with Porter regarding the Dade County Litigation in the July 1988–1993 time period is consistent with his reports to me of those conversations.

14. Near mid-July 1993 I had lunch with Porter's former General Counsel Lawrence Moncrief, Esquire, with whom I kept in contact due to our friendship that grew out of our former working relationship at Porter. Mr. Moncrief brought up the subject of the Dade County Litigation and told me in words to the effect that substantial progress had been made in that case. I recall that I had the distinct impression from our conversation that there had been developments in that case of which Delta Star had been unaware and that a favorable outcome of that case may soon be possible. Because the information given me by Mr. Moncrief was contrary to everything we had been told by Porter regarding the Dade County Litigation, upon returning to the office I immediately instructed Mr. Balsley to contact counsel in the Dade County Litigation to get further details regarding the status of that case, including its settlement prospects. I also told Mr. Balsley to make certain that counsel knew of Delta Star's interest in that case and to instruct attorney Kline that no

dispositive action should be taken without Delta Star's express approval.

15. Mr. Balsley reported to me that Attorney Kline had informed him that unless he received instructions from Porter, he would take no steps to protect Delta Star's interest. Mr. Kline also told Mr. Balsley that he would take up this matter with Porter. At that point, I began the process to retain counsel to take any appropriate action to protect Delta Star's right to determine and receive the proceeds of any settlement of the Dade County Litigation. I did not learn until late 1993 that Porter had, without any notice whatsoever to Delta Star, reached a settlement agreement with Dade County and had obtained the Bankruptcy Court's approval of that settlement, on the basis of the misrepresentation that no one other than Porter and Attorney Kline had an interest in that settlement.

Delta Star did not substitute itself as Plaintiff in the Litigation. Delta Star chose instead to rely on Porter to turn over any proceeds it received to Delta Star. The Affidavit of Andrew Patton provides:

12. Delta Star was aware that, under the applicable civil rules, it was entitled pursuant to the Conveyance Agreement by virtue of Porter's transfer of its interest in the Dade County Litigation to Delta Star, to cause Delta Star to be substituted for Porter as the named plaintiff in the Dade County Litigation but it was not required to do so. I was aware that under the civil rules, that action may be continued in Porter's name for the benefit of Delta Star and that Delta Star would be bound by any result in that litigation. Because of the adverse judgments that had been entered against Porter, the dim prospects of recovery and confident that Porter would turnover to Delta Star any proceeds in the (at that time) unlikely event of a recovery I saw no purpose in formally substituting Delta Star's name for Porter.

On November 3, 1993, Delta Star filed a Complaint in the Court of Common Pleas of Allegheny County, Pennsylvania which names Porter as Defendant seeking a declaration that Delta Star is entitled to the set-

tlement proceeds from the Litigation ("Complaint"). Paragraph 2 of the Complaint states that "H.K. Porter is a debtor-in-possession under Chapter 11 of the United States Bankruptcy Code...."

After Porter was served with a copy of the Complaint, counsel for the Debtor, by letter dated November 18, 1993, advised counsel for Delta Star that it was in violation of the automatic stay and requested that the State Court Action be immediately discontinued.

On March 17, 1994, Porter was served with Delta Star's Motion to Abstain (Motion No. MML–2) requesting that this Court abstain from this controversy and permit the State Court Action to be prosecuted to completion. On that same date, Porter served a second letter on counsel for Delta Star, again demanding that the State Court Action be discontinued. Delta Star has refused to discontinue the State Court Action.

### Discussion

■ Pennsylvania law recognizes both legal and equitable assignments. *Huff v. Nationwide Ins. Co.*, 167 B.R. 53 (WDPa.1992) *aff'd.* 989 F.2d 487 (3d Cir. 1993). A legal assignment is a transfer of property, a right or interest from one person, the assignor, to another, the assignee, which transfers the entire interest in the thing assigned unless it is qualified. *Id.* "To effect a legal assignment, the assignor must at the time of the assignment have a present intent to transfer or divest himself of his rights." *Id., quoting, Brager v. Blum,* 49 B.R. 626, 629 (EDPa.1985). In the event a party cannot demonstrate a legal assignment, the party may invoke the doctrine of equitable assignment. *Huff* at 60. "An equitable assignment is 'any order, writing or act by the assignor which makes an absolute appropriation of a chose in action or fund to the use of the assignee with the intention to transfer a present interest ...'." *Id., quoting, In re Purman's Estate,* 358 Pa. 187, 190, 56 A.2d 86, 88 (1948). "Pennsylvania law will recognize a valid assignment if the assignor intentionally transferred a right to the assignee with the present intent to divest himself of his right and relinquishing all his claims or interest in favor of the assignee." *Huff* at 60.

■ The agreement as between Porter and Delta Star was valid, but was not a present transfer, nor did either of the parties intend it to be. There was no delivery of the Litigation to Delta Star nor was there an intent to make a present transfer of all of Porter's right, title, and interest in the Litigation from Porter to Delta Star. Subsequent to execution of the Agreement, Porter, and not Delta Star, continued to prosecute the Dade County Litigation. Porter paid the continuing expenses of the Litigation, negotiated a settlement and sought Court approval. Delta Star took no action to substitute itself as plaintiff in the Litigation or to notify the defendants that Delta Star had an interest in the proceeding (until after it was settled). Porter was left free to handle the Litigation and settlement as it saw fit. There was no accountability whatsoever to Delta Star.

The conclusion is inescapable that there was no present transfer and no intent to make a present transfer of the Litigation to Delta Star; there was no change in possession; no change in dominion and control; no delivery of the chose in action.

The Affidavit of Andrew Patton virtually admits this fact—he was "confident that Porter would turn over to Delta Star any proceeds in the ... event of a recovery." Unfortunately for Delta Star, Porter filed bankruptcy. When it filed, it still had the sort of "possession" of the Litigation which makes it property of the estate.

■ "[S]o long as ... the obligor of the chose in action does not dispute the debtor's or the bankrupt's entitlement and right to possess or collect, the situation is not essentially different in legal contemplation from that of property in the physical possession of the debtor or bankrupt. This equivalence is conveniently expressed in the accepted rule that a reorganization or a bankruptcy court acquires jurisdiction of all property in the actual or 'constructive' possession of the debtor or the bankrupt." *In re Lehigh Valley Railroad Co.,* 458 F.2d 1041, 1043 (3d Cir.1972). The test of jurisdiction is not title in, but possession by, the bankrupt at the

**102**

time of the filing of the bankruptcy Petition. *Id.* at 1043 fn4.

At the critical time of the bankruptcy filing, Porter had possession of the Litigation and it therefore passed to the bankruptcy estate.

■ The bankruptcy estate has more than mere legal title to the Dade County Litigation. While there may have been a valid agreement between Porter and Delta Star to transfer the Dade County Litigation to Delta Star, the sale or transfer was incomplete as to Porter's creditors if the Litigation was not delivered to Delta Star and Delta Star did not "possess" the Litigation at the time of the bankruptcy filing. *See Commonwealth v. Hess,* 148 Pa. 98, 23 A. 977 (1892). The Litigation is a chose in action—a form of personal property. *In re Hayes,* 168 B.R. 717, 726 (D.Kan.1994) *quoting* 63A Am. Jur.2d *Property* (1984) at 256–57. The delivery of possession in personal property is indispensable to transfer a title as against creditors. *In re Kellett Aircraft Corp.,* 173 F.2d 689 (3d Cir.1949); *Proyectos Electronicos, S.A. v. Alper,* 37 B.R. 931 (E.D.Pa.1983); *Shipler v. New Castle Paper Products Corp.,* 293 Pa. 412, 143 A. 182 (1928); *Rogers v. Schadt,* 218 Pa. 617, 67 A. 919 (1907).

■ The prepetition debtor and the debtor-in-possession are legally distinct entities. A Chapter 11 debtor-in-possession has all the rights and powers of a trustee. 11 U.S.C.A. § 1107(a); *In re Int'l. Yacht and Tennis, Inc.,* 922 F.2d 659 (11th Cir.1991); *Zilkha Energy Co. v. Leighton,* 920 F.2d 1520 (10th Cir.1990). Employing the powers granted to a trustee, the debtor-in-possession can enforce the rights of creditors. *Id.*

■ A buyer who purchases personal property who does not take possession but leaves custody to the seller takes the risk of the seller's insolvency and integrity and no title passes as against seller's creditors. *Wendel v. Smith,* 291 Pa. 247, 139 A. 873 (1927). A transfer of possession in the sale of personal property, either actual or constructive, must take place so as to give notice to the public in order to transfer title to the purchaser as against innocent creditors. *In re Leppe,* 50 F.2d 975 (MDPa.1931).

■ To determine whether Delta Star assumed control of the Litigation sufficient to reasonably indicate a change of ownership, we look at all the surrounding circumstances and the acts of the parties. *Rogers v. Schadt,* 218 Pa. 617, 67 A. 919 (1907). We take into consideration "the character of the property, the use to be made of it, the position of the parties, and the usages of trade or business." *Shipler,* 293 Pa. at 421, 143 A. at 185. Where actual delivery is not practicable, the parties should leave nothing undone. *Id.*

What was done in the present case to transfer the chose in action to Delta Star? Absolutely nothing. The Agreement does not even identify the Litigation as an asset which is being transferred. *See First Nat'l. Bank & Trust Co. of Tarentum v. Jaffe,* 114 Pa.Super. 315, 173 A. 845, 848 (1934). (If [the property] is incapable of, or inconvenient for, an actual delivery, then a symbolic delivery may be made by giving a writing which sufficiently describes the property ... to identify it.)

Delta Star asserts that pursuant to Fed. R.Civ.P. 25, it was not required to substitute itself as a party to the Litigation. But that Rule addresses only the procedural posture of the case in the District Court. It is not relevant to a determination of the nature or extent of the ownership interests in the chose in action. It does not supply an act of delivery, or of taking possession, which is necessary to Delta Star's ownership.

Delta Star asserts that "from time to time during the period from the execution in 1988 of the Conveyance Agreement and continuing to mid–1993, Delta Star would inquire of representatives of Porter regarding the status of the Dade County Litigation and was advised that the Litigation was not active." Certainly this fact does not assist Delta Star with its assertion that it had title to the Litigation—it shows that Porter remained in possession and control of the Litigation.

Delta Star's Chief Executive Officer was also aware that the Litigation remained in Porter's possession and under Porter's control. As he states in his Affidavit: "Because of the adverse judgments that had been en-

tered against Porter, the dim prospects of recovery and *confident that Porter would turnover to Delta Star any proceeds in the (at that time) unlikely event of a recovery,* I saw no purpose in formally substituting Delta Star's name for Porter," (emphasis added).

Thus, Delta Star's Chairman and Chief Executive Officer acknowledges Porter's right to receive any proceeds of the Litigation. He relied on Porter's good faith to turn over the proceeds. Unfortunately, the bankruptcy intervened, Delta Star having never taken possession or control of the Litigation, title at all times remained with Porter and the Litigation is property of the bankruptcy estate, subject to the claims of Porter's creditors.

The Agreement between Porter and Delta Star by which Porter agreed to convey the Litigation was valid and binding between the parties, but the Litigation was never in fact conveyed or transferred, and the settlement proceeds from the Litigation are property of the estate. If Delta Star has a claim against Porter, it is a prepetition general unsecured claim. Any determination concerning a claim by Delta Star is a core matter within the jurisdiction of Bankruptcy Court. No claim, other than Delta Star's assertion of present ownership of the Litigation, is now before us.

Accordingly, Delta Star's Motions will be refused. Delta Star will be directed to discontinue its State Court Litigation against the Debtor. Counsel for the Debtor having advised the Court that it would not continue to pursue sanctions if this matter were herein concluded, no sanctions will be imposed.

### ORDER

This 23rd day of June, 1995, in accordance with the accompanying OPINION, it shall be, and hereby is, ORDERED as follows:

1. Delta Star's MOTION TO PARTIALLY VACATE AND MODIFY ORDER OF COURT DATED AUGUST 19, 1993 AND FOR SUPPLEMENTAL RELIEF is REFUSED.

2. Delta Star's MOTION TO ABSTAIN PURSUANT TO 28 U.S.C. § 1334(c) OR IN THE ALTERNATIVE CONVERT TO AN ADVERSARY PROCEEDING is REFUSED.

3. Delta Star shall immediately discontinue its action against H.K. Porter Company in the Court of Common Pleas of Allegheny County, Pennsylvania at GD No. 93–17982.

4. H.K. Porter Company, Inc.'s request for sanctions against Delta Star for willful violation of the automatic stay is REFUSED.

5. The net proceeds of the settlement of the lawsuit captioned *H.K. Porter Company, Inc. v. Metropolitan Dade County* ($600,-000.00 plus accrued interest) is property of the bankruptcy estate of H.K. Porter Company, Inc.

6. Whether Delta Star, Inc. has a general unsecured claim against the Debtor and, if so, the amount thereof, was not addressed by the parties and is not addressed by this Order.